UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. __1:22-cv-7389__ |
| PEOPLE OF THE STATE OF CALIFORNIA, | **COMPLAINT FOR PERMANENT INJUNCTION, MONETARY RELIEF, AND OTHER RELIEF** |
| STATE OF COLORADO, | |
| STATE OF FLORIDA, | |
| PEOPLE OF THE STATE OF ILLINOIS, | |
| COMMONWEALTH OF MASSACHUSETTS, and | |
| PEOPLE OF THE STATE OF STATE OF NEW YORK, | |
| Plaintiffs, | |
| v. | |
| ROOMSTER CORP., a corporation, | |
| JOHN SHRIBER, individually and as an officer of Roomster Corp., | |
| ROMAN ZAKS, individually and as an officer of Roomster Corp., and | |
| JONATHAN MARTINEZ, individually and doing business as AppWinn, | |
| Defendants. | |

Plaintiffs, the Federal Trade Commission ("FTC"), and the People of the State of

California, Attorneys General of the States of Colorado, Florida, Illinois, and the Commonwealth

of Massachusetts, and the People of the State of New York ("Plaintiff States," and together with

the FTC, "Plaintiffs"), for their Complaint allege:

1.     The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), which authorizes the FTC to seek, and the Court to order, permanent injunctive relief and other relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

2.     The Plaintiff States bring this action by and through their attorneys general, who are the chief legal officers for their respective states and commonwealth. The Plaintiff States bring this action pursuant to consumer protection and business regulation enforcement authority conferred on their attorneys general by state and common law authority. These state laws authorize the Plaintiff States to seek, and the Court to order, temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' state law violations. These laws also authorize the Plaintiff States to obtain civil penalties, attorneys' fees, expenses, and costs.

## SUMMARY OF CASE

3.     Roomster Corp., John Shriber, and Roman Zaks (the "Roomster Defendants") operate an internet-based room and roommate finder platform called "Roomster." Since at least 2016, the Roomster Defendants, with the help of Defendant Jonathan Martinez also doing business as AppWinn ("Martinez"), have inundated the internet with tens of thousands of fake positive reviews to bolster their false claims that properties listed on their Roomster platform are real, available, and verified. In addition, the Roomster Defendants, either directly or through their affiliates, have peppered the internet with fake listings to drive traffic to their platform.

4.     Although the Roomster Defendants claim that their Roomster platform provides "verified" and "authentic" living arrangement listings, in many instances it does not. Instead, the

Roomster Defendants rely on fake reviews (thousands of which were purchased from Defendant Martinez alone) and fake listings to get consumers to pay for access to rental information that is unverified and, in many instances, does not exist.

5.      In this manner, the Roomster Defendants have taken tens of millions of dollars from consumers who can least afford to lose their money and who need reliable housing the most. Consumers injured by Defendants' conduct are typically students, lower-income individuals, and those desperate for safe, low-cost housing in markets where such housing is extremely hard to find. According to the Roomster Defendants, Roomster customers are in the lowest end of the rental market, they generally have limited funds, and every dollar counts.

6.      In addition, the Roomster Defendants' misrepresentations about the authenticity of their Roomster listings have lured these same consumers into paying substantially more money to fraudsters who have flooded the Roomster platform with their own fake and unverified listings. During the pandemic, these rental listing scammers have had free rein to exploit the platform, with many fraudsters attempting to collect deposits or rental payments upfront under the guise that COVID-19 prevents them from showing the properties.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (b)(3), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFFS

9.      The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own

attorneys. 15 U.S.C. §§ 41–58. The FTC enforces Section 5(a) of the FTC Act,

15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

10.     The People of the State of California ("California") bring this action by and

through Attorney General Rob Bonta, who is authorized by California Business and Professions

Code §§ 17535 and 17536 to enforce the California False Advertising Law, California Business

and Professions Code § 17500 *et seq.*, and authorized by California Business and Professions

Code §§ 17203, 17204, and 17206 to enforce the California Unfair Competition Law, California

Business and Professions Code § 17200 *et seq*. Among other relief, California Business and

Professions Code §§ 17203 and 17535 authorize the Attorney General to obtain injunctive relief

to halt violations of, and enforce compliance with the Unfair Competition Law and False

Advertising Law, respectively, and also authorize the Attorney General to seek all orders or

judgments as may be necessary to restore to any person in interest any money or other property

acquired through violations of the Unfair Competition Law and False Advertising Law. The

Attorney General is also authorized by California Business and Professions Code §§ 17206 and

17536 to obtain civil penalties.

11.     The State of Colorado brings this action by and through Attorney General Philip

J. Weiser pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stats. §§ 6-1-101, *et

seq.*, ("CCPA"), which prohibits unfair and deceptive trade practices in the course of a

defendant's business or occupation. The CCPA authorizes the Colorado Attorney General to

seek, and the Court to grant, civil penalties, injunctive relief, and such orders as may be

necessary to prevent the use or employment of deceptive trade practices, to completely

compensate or restore to the original position of any person injured, or to prevent any unjust

enrichment. Colo. Rev. Stats. §§ 6-1-110 and 112.

4

12.     The Office of the Attorney General, State of Florida, Department of Legal Affairs ("State of Florida") brings this action by and through Attorney General, Ashley Moody, under the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes ("FDUTPA"), which authorizes the State of Florida to seek, and the Court to order, permanent injunctive relief, recission or reformation of contracts, consumer restitution, the refund of monies paid, disgorgement of ill-gotten monies, attorney's fees, civil penalties, and other equitable relief for Defendants' acts or practices in violation of FDUTPA. Fla. Stat. §§ 501.207(1)(b), 501.207(3), 501.2075, and 501.2077. The State of Florida is the enforcing authority under FDUTPA pursuant to Section 501.203(2), Florida Statutes. Conduct that violates Section 5(a) of the FTC Act also violates Section 501.204 of the FDUTPA. Fla. Stat. §§501.203(3), 501.204(2). The provisions of FDUTPA shall be "construed liberally" to promote and "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202. The State of Florida has conducted an investigation and determined that an enforcement action serves the public interest as required by FDUTPA Section 501.207(2).

13.     The People of the State of Illinois ("State of Illinois") bring this action by and through Attorney General Kwame Raoul pursuant to the provisions of the Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), 815 ILCS 505/1 *et seq.*, which prohibits unfair or deceptive acts or practices in or affecting commerce and authorizes the Illinois Attorney General to obtain injunctive and other relief to halt violations of, and enforce compliance with, the Illinois Consumer Fraud Act.

14.     The Commonwealth of Massachusetts brings this action by and through Attorney General Maura Healey, who is authorized by Mass. Gen. Laws ch. 12, § 10 and Mass. Gen. Laws ch. 93A, § 4 to commence this legal action in the public interest. The Massachusetts Attorney General enforces the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2 and 4, and the regulations promulgated thereunder, which prohibit unfair or deceptive acts or practices in trade or business, and which authorize the Massachusetts Attorney General to seek civil penalties, injunctive relief, restitution, attorneys' fees, costs, and any other equitable relief deemed appropriate. In accordance with Mass. Gen. Laws ch. 93A, § 4, the Commonwealth of Massachusetts provided the statutorily required notice to Defendants more than five days prior to commencing this action.

15.     The People of the State of New York ("State of New York") bring this action by and through Attorney General Leticia James under N.Y. Executive Law § 63(12), which authorizes the New York Attorney General ("NYAG") to seek, and the Court to order, permanent injunctive relief, restitution, damages, and disgorgement against any person or business which has engaged in any repeated or persistent fraud or illegality in the conduct of its business, and N.Y. General Business Law ("GBL") Article 22-A, which authorizes the NYAG to seek, and the Court to order, permanent injunctive relief, restitution, and civil penalties for deceptive acts or practices and false advertising under N.Y. GBL § 350, and for such order to provide for nationwide restitution where the business is located in the State of New York as is the case in this action. In accordance with GBL §§ 349(c) and 350-c, the State of New York provided the statutorily required notice to Defendants.

## DEFENDANTS

16.     Defendant Roomster Corp. ("Roomster") is a New York corporation with its

principal place of business at 285 W Broadway, Suite 410, New York, New York 10013.

Roomster transacts or has transacted business in this District and throughout the United States.

Roomster is a small company that is co-owned by Defendants John Shriber and Roman Zaks.

17.     Defendant John Shriber ("Shriber") is the co-founder, co-owner, and Chief

Executive Officer of Roomster. At all times relevant to this Complaint, acting alone or in concert

with others, he has formulated, directed, controlled, had the authority to control, or participated

in the acts and practices set forth in this Complaint. Shriber exercises control over all aspects of

Roomster's business operations, including the creation of Roomster's policies, procedures, and

business practices, including its advertising practices, marketing practices, billing practices,

charge disputes, affiliate program, handling of consumer complaints, consumer review practices,

and responses to allegations of fraud, scams, or abuse. Shriber is also responsible for approving

Roomster-supplied platform content. Defendant Shriber resides in this District and, in connection

with the matters alleged herein, transacts or has transacted business in this District and

throughout the United States.

18.     Defendant Roman Zaks ("Zaks") is the Chief Technology Officer, and along with

Defendant Shriber, the co-founder and co-owner of Roomster. At all times relevant to this

Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the

authority to control, or participated in the acts and practices set forth in this Complaint. Zaks also

exercises control over all aspects of Roomster's business operations, including the creation of

Roomster policies, procedures, and business practices. Along with Shriber, Zaks also manages

Roomster's advertising and marketing practices, billing practices, charge disputes, affiliate

7

program, handling of consumer complaints, and responses to allegations of fraud, scams, or abuse, and he is likewise responsible for approving Roomster-supplied platform content. Defendant Zaks resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

19.     Defendant Jonathan Martinez ("Martinez") is an individual also doing business as AppWinn. At all times relevant to this Complaint, acting alone or in concert with others, he has provided fake reviews for the Roomster Defendants' platform. Defendant Martinez resides in California and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

## COMMERCE

20.     At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44, and as trade or commerce is defined in Plaintiff States' statutes.

## DEFENDANTS' BUSINESS ACTIVITIES

21.     The Roomster Defendants advertise that their Roomster platform, available through their website and corresponding mobile applications, allows users to post and search listings for living arrangements, including rental properties, room rentals, sublets, and roommate requests.

22.     The Roomster Defendants claim that the listings provided on their platform are real, available, and verified. These representations have been published to millions of people.

23.     In numerous instances and on various locations on their website, the Roomster Defendants state that Roomster has "authentic" listings and that the Roomster Defendants "mak[e] sure the Roomster profiles and the listings on the site are complete, accurate, updated

and yes…authentic."

24.     Similarly, until they received notice of this investigation, the Roomster

Defendants claimed on their mobile device applications to have "millions of verified listings" in

a "safe community with real members worldwide:"



25.     In reality, the Roomster Defendants do not verify listings or ensure that their

listings are real or authentic. The Roomster Defendants post listings on their Roomster platform

immediately upon request, as long as the street address associated with the listing is recognized

by the platform. The Roomster Defendants do not determine whether their listings are authentic

and, despite purporting to offer only residential listings, do not verify whether the listed address

is residential or commercial.

26.     For example, an undercover investigation shows that the Roomster Defendants

immediately accepted and published a fake listing with a U.S. Postal Office commercial facility

address. The fake listing also contained fictitious rental specifications that included an apartment

at less than half the price and twice the square footage as those in the represented market. That listing has remained active for several months. The Roomster Defendants have not contacted the lister to verify the address, the specifications, or the legitimacy of the email or other personal information of the lister.

27.     To lend credence to their misrepresentations that their listings are authentic and verified, the Roomster Defendants, often with the help of Defendant Martinez, saturate the internet with tens of thousands of 4 and 5 star fake reviews, including through app stores, where the Roomster Defendants do most of their business.

28.     App stores provide mobile application users the opportunity to leave customer reviews. Reviews provide a forum for sharing authentic feedback so consumers can make informed decisions about the products and services they use. Fictitious reviews distort the market. They are also illegal.

29.     Contrary to the law and app store terms of service that prohibit manipulating reviews or ratings, inflating rankings or ratings with paid, incentivized, fraudulent, or fake reviews or feedback, or otherwise cheating the system, the Roomster Defendants, directly and through others, including Martinez, posted mass quantities of positive reviews.

30.     Although the Roomster Defendants claim they do not pay for reviews, the Roomster Defendants bought over 20,000 reviews from Defendant Martinez alone.

31.     Defendant Martinez utilized more than 2,500 fake iTunes accounts, as well as fake gmail accounts, to push out fake reviews on Roomster's apps. Before Martinez became aware of this investigation, his website stated "Buy app reviews & boost your app ranking." By selling fake reviews to the Roomster Defendants, Defendant Martinez helped the Roomster Defendants distort the market and deceive potential users of the Roomster platform.

10

32.     For over four years, the Roomster Defendants engaged in what Defendant
Martinez referred to as "drip campaigns," which involve "the steady flow of reviews." The
Roomster Defendants only paid for fake reviews that "stuck" (*i.e.*, those that passed app store
algorithms and were visible to consumers). At various times, Defendant Martinez told
Defendants Shriber and Zaks that fake reviews had to be "dripped" at a "slower pace" because
many were not "sticking."

33.     Similarly, Defendant Shriber directed Defendant Martinez to spread out the
reviews to be "constant and random."

34.     In addition, Defendant Shriber instructed Defendant Martinez to produce "lots of
5 star IOS app reviews" and stated that he "would like to be #1" for people searching for
roommates.

35.     Along with the drip campaigns, Defendants also blasted hundreds of reviews at
once when it suited their purposes. For example, Defendant Shriber stated "I need to get to the
top of 'rooms for rent'. [W]hat can be done?" Defendant Martinez responded, "We can blast
100-200 reviews for that keyword to get some movement."

36.     The Roomster Defendants also required that fictitious reviews post in random
amounts. For example, they emailed Defendant Martinez the following:

> We are ready to place an order. 500 reviews for iTunes and 300 for
> Android for US market.
> . . .
>
> Post a random number every day and no more then [sic] 20 for
> iTunes, 15 for Android, please.

37.     The Roomster Defendants also directed that reviews post in random amounts for
several countries across the globe, specifying in their orders how many reviews should go to

each country. For example, in one email alone, the Roomster Defendants directed Defendant

Martinez as follows:

> Total number of reviews for iTunes platform shouldn't ecceed [sic]
> 50 per day.
>
> Please, post a random number of reviews between 18 - 30
> US market - 500
>
> 500 for markets from this list
>
> random number of reviews between 4 - 10:
> Australia - 50
> Norway - 50
> random number of reviews between 1 - 8:
> Austria - 20
> Belgium - 20
> Bulgaria - 20
> Croatia - 20
> Czech Republic - 20
> Denmark - 20
> Estonia - 20
> Finland - 20
> France - 20
> Germany - 20
> Greece - 20
> Hungary - 20
> Ireland - 20
> Italy - 20
> Latvia - 20
> Lithuania - 20
> Luxembourg - 20
> Macedonia - 20
> Moldova - 20
> Netherlands - 20

38.     Even after receiving notice of the FTC's investigation, the Roomster Defendants

continued to instruct that reviews post in random amounts in order to appear natural, at one point

emailing Defendant Martinez:

> Just as a reminder, please make sure it's always a random number
> of reviews, so it looks more natural.

39.     Examples of 5-star reviews that the Roomster Defendants bought include:

    a.  Wonderful!
Roomster is better then others. Very easy to use. Tons of
listing. No scammers, all users are real. Easy to
communicate with owners. In a single word FANTASTIC!

    b.  Awesome!
I found Roomster very useful for students who are
searching for a place to live or friends to live with. It gives
reasonable price, a lot of useful suggestions.

    c.  Roomster is great!
Especially for low-income people who need rented
accom[m]odation or those students who need to rent a
room because [i]t provides the service with a reasonable
price range period.

    d.  like!
I'm a student with a small budget, so I love going through
Roomster for sharing my room. It makes finding
roommates faster and more efficient. Roomster is a good
choice for me!

    e.  Awesome!
Roomster helps me save time and[] is a trusted name for
me to post & search for accommodations around the world
with other like minded individuals.

    f.  Fantastic!!!!
Roomster is easy to find roommates and apartments. All are
shown obviously on the map. Secure and easier to be able
to chat with your roommates.

    g.  Fantastic!!!
I found a ton of verified listings in Roomster. It is easy for
everyone to find a great roommate.

    h.  Love it!
Everyone should use Roomster for finding roommates. I
did & it worked great. Being able to click through to
people's Facebook is such a good idea.

    i.   God job guys!
         I personally enjoyed using Roomster. I got all the help
         required from the[m] and also the genuine chat.

    j.   Incredibly useful!
         Needed a roommate to share my place. Download
         Roomster. Got some great leads right away.

    k.   Excellent!
         Good job ..lots of users ...very useful to find genuine users
         ..no time wastage with brokers. Excellent!

    l.   So useful!
         Roomster is really excellent. Best app for finding rooms &
         roommates shortly. So useful & very fast.

40.     The reviews in Paragraph 39 were fabricated.

41.     The sheer volume of the Roomster Defendants' fake reviews dilutes reviews from

real users, such as the following 1-star reviews:

    a.   Full of scammers
         I highly highly suggest that you do not use this site!
         Because you will get scammed. This app is loaded with
         people trying to scam you! Out of every 10 post 8 are
         scammers DO NOT USE THIS APP!!

    b.   Don't waste your time
         I couldn't give it zero. It won't let me view things so I got a
         7 day subscription. Reached out to 38 listers. Got response
         from only 1 legitimate lister. The rest was all scam and 5
         days of headache. Steer clear. They don't vet

    c.   Worst app ever waste of money
         If I could give a negative 100 star I would. Idk of all those
         good reviews are fakes too or what. But I literally reach out
         to atleast 50-60 people and I received few msg offering a
         place. And all of them just fake. Same exact email you give
         the deposit and first month rent and they will mail you the
         key. Cause they "at funeral, in different country, traveling,
         blah blah blah blah." Cause honestly if you make a app
         specific for room rental then should be vetted or something,
         not 99.9 fake once's, and now they spamming craigslist
         with their fake posts. I used AirBnB which is free to use

and never had issue with them. They really need to change this website ASAP. I bet all of these 5 star reviews are all fake. How many people I know they all say the same about this website.

d. Scams
This site is full of scams. I have been contacted by multiple people on this app saying they can't show me the room because they're out of town but that I should send them the deposit and they'll send me the key. It's the same storyline every time. They also have bugs on Craigslist. There are listings on Craigslist that I email n they email back telling me to sign up for roomies [Roomster] and nothing else. A very disappointing app

e. too bad
most information are fake, administrator dont have any rules to prevent this issue. after i request renting from someone, she/he ask me for giftcard payment. ridiculous!!!

f. Fake Scam Beware!
This app charges you 7.95 then 24.95 then another 24.95. There's absolutely no rooms. They are all scams! They don't message back and refuse to give you your money back. I can't believe this app is allowed. Please Do Not Download it! They lie, cheat and steal your $ with no return.

g. Rip Off
This site is full of fake ads to get you to pay $7.99 per week. They lure you in on Craigslist with an enticing ad and the only way to communicate is to sign up and pay. Funny thing is, they never answer. :((

h. You thought !
Worst app ever tons of scam artists it's a fake app do not waste your money do not contact anyone it is a scam app people will try and hack your phone do not buy this app or download it beware

i. Scam
This app is garbage. I had higher hopes but it completely let me down. Every profile on here seems to be a fake profile and every message I got from people said almost exactly the same thing. Not worth it.

15

42.     To further induce consumers to pay for their Roomster platform, the Roomster Defendants, either directly or through their affiliates, bait the internet with advertisements for fake listings, including on Craigslist. Through these fake listings, consumers are directed to Defendants' platform and encouraged to sign up and pay a fee to obtain information necessary to secure the rental. Consumers who sign up soon learn that the listings that drove them to the Roomster Defendants' platform do not exist.

43.     In addition, consumers are soon bombarded by fraudsters with more fake listings and are asked to pay hundreds or thousands of dollars to secure a rental, sight unseen, often under the guise that COVID-19 prevents the lister from showing the property.

44.     The Roomster Defendants have taken in excess of $27 million from consumers, many of whom can least afford to lose money. According to Defendant Zaks, "a Roomster customer is an individual in the lowest end of the rental market, they generally have limited funds, and every dollar counts." Similarly, according to Defendant Shriber, the Roomster Defendants "are servicing the most affordable end of the [r]eal estate market. Searching for housing is stressful in all price points, but for Roomster customers even more so . . . generally for financial reasons. For Roomster customers every penny counts." Compounding that injury, consumers have paid hundreds and even thousands of dollars more to fraudsters who take advantage of the Roomster Defendants' non-existent verification protocols.

45.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that the Roomster Defendants are violating or are about to violate laws enforced by the Commission, because, among other things, they engaged in their unlawful acts and practices repeatedly over a period of at least four years, they engaged in their unlawful acts

16

and practices willfully and knowingly, and they continued their unlawful acts or practices despite knowledge of numerous complaints and this investigation.

46.    In addition, based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendant Martinez is violating or is about to violate laws enforced by the Commission because, among other things, he engaged in the unlawful acts and practices alleged repeatedly over a period of approximately four years, he did not cease doing business with the Roomster Defendants until after the FTC began its investigation, and Martinez has provided the same or similar services for other businesses.

## VIOLATIONS OF THE FTC ACT

### Count I
### False Endorsements
### (Against all Defendants)

47.    Through the means described above, Defendants have represented, directly or indirectly, expressly or by implication, that certain reviews of the Roomster platform were truthful reviews by actual users of the Roomster Defendants' services.

48.    In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraphs 47 of this Complaint, the reviews of the Roomster platform were not truthful reviews by actual users of the platform, but instead were fabricated by one or more third parties who were paid to generate reviews.

49.    Therefore, the making of the representations as set forth in Paragraph 47 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

17

## Count II
### Misrepresentations that Listings Are Verified, Authentic, or Available
### (Against the Roomster Defendants)

50. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of services related to living arrangement listings, the Roomster Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, directly or indirectly, expressly or by implication, that the listings on their Roomster platform are verified, authentic, or available.

51. The representations set forth in Paragraph 50 are false or misleading or were not substantiated at the time the representations were made.

52. Therefore, the making of the representations as set forth in Paragraph 50 constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF STATE LAWS

### Count III
### Violations of New York Executive Law Section 63(12)
### (By Plaintiff People of the State of New York Against All Defendants)

53. As set forth in Paragraphs 1 through 46 above, which allegations are incorporated as if set forth herein, Defendants have committed acts and practices that constitute repeated or persistent fraudulent and illegal conduct in violation of N.Y. Executive Law § 63(12).

### Count IV
### Violations of New York General Business Law Article 22-A
### (By Plaintiff People of the State of New York Against All Defendants)

54. As set forth in Paragraphs 1 through 46 above, which allegations are incorporated as if set forth herein, Defendants have committed acts and practices that are deceptive business practices and false advertising in violation of GBL §§ 349 and 350.

**Count V**
**Violations of California Business and Professions Code § 17500 *et seq*.**
**(False or Misleading Statements)**
**(By Plaintiff People of the State of California Against All Defendants)**

55.     Plaintiff the People of the State of California allege and incorporate by reference paragraphs 1 through 52 above as though fully set forth herein.

56.     Defendants have engaged, and continue to engage in, aided and abetted, and conspired to engage in acts or practices that constitute violations of Business and Professions Code § 17500 et seq. by making or disseminating, or causing to be made or disseminated, false or misleading statements with the intent to induce members of the public to purchase Defendants' services or products when Defendants knew, or by the exercise of reasonable care should have known, that the statements were false or misleading.

57.     The Roomster Defendants' false or misleading statements include, but are not limited to, the following:

> a)     falsely representing that certain reviews of the Roomster platform were truthful reviews by actual users when in actuality those reviews were not truthful reviews by actual users of the Roomster platform.

> b)     falsely representing that the listings on the Roomster platform are verified, authentic, or available.

58.     Defendant Martinez's false or misleading statements include, but are not limited to, the following:

> a)     Falsely representing that certain reviews of the Roomster platform were truthful reviews by actual users when in actuality those reviews were not truthful reviews by actual users of the Roomster platform.

19

**Count VI**
**Violations of California Business and Professions Code § 17200 *et seq.***
**(Unlawful, Unfair, and/or Fraudulent Business Practices)**
**(By Plaintiff People of the State of California Against All Defendants)**

59.     Plaintiff the People of the State of California reallege and incorporate by reference Paragraphs 1 through 52 and 55 through 58 as though fully set forth herein.

60.     Defendants have engaged, and continue to engage, aided and abetted, and conspired to engage in acts or practices that are unlawful, unfair, or fraudulent, and which constitute unfair competition within the meaning of California Business and Professions Code § 17200. These acts or practices include, but are not limited to, the following:

a)      Defendants have violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as alleged herein;

b)      Defendants have violated Business and Professions Code § 17500 et seq. as alleged in Count V;

c)      The Roomster Defendants have violated the California Consumer Legal Remedies Act, California Civil Code § 1770(5), by representing that their goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

d)      The Roomster Defendants have violated the California Consumer Legal Remedies Act, California Civil Code § 1770(7), by representing that their goods or services are of a particular standard, quality, or grade, when they are of another;

e)      The Roomster Defendants have violated the California Consumer Legal

Remedies Act, California Civil Code § 1770(9), by advertising goods or services

with intent not to sell them as advertised.

**Count VII**
**Violations of the Colorado Consumer Protection Act (CCPA)**
**(Knowingly or recklessly making a false representation as to the source, sponsorship,**
**approval, or certification of goods, services, or property, C.R.S. § 6-1-105(1)(b))**
**(By Plaintiff State of Colorado Against the Roomster Defendants)**

61.     Plaintiff State of Colorado incorporates herein by reference all allegations set

forth above.

62.     In the course of their business or occupation, the Roomster Defendants violated,

and may continue to violate, the CCPA by knowingly or recklessly making false representations

in advertisements and other communications.

63.     The Roomster Defendants' false or misleading statements as to the certification of

goods, services, or property include, but are not limited to:

a)      falsely representing that certain reviews of the Roomster platform were

truthful reviews by actual users when those reviews were not truthful reviews by

actual users of the Roomster platform;

b)      falsely representing that certain listings on the Roomster platform are

verified, authentic, or available.

64.     The Roomster Defendants' false and misleading acts and practices had a

significant public impact.

**Count VIII**
**Violations of the Colorado Consumer Protection Act (CCPA)**
**(Knowingly or recklessly making false representations as to affiliation, connection, or association with or certification by another, C.R.S. § 6-1-105(1)(c))**
**(By Plaintiff State of Colorado Against All Defendants)**

65.     Plaintiff State of Colorado incorporates herein by reference all allegations set forth above.

66.     In the course of their business or occupation, Defendants violated, and may continue to violate, the CCPA by knowingly or recklessly making false representations in advertisements and other communications regarding the source of certain consumer reviews for the Roomster platform and the affiliation, connection, association, or certification of those reviews with or by real consumers of the Roomster platform.

67.     Defendants' false or misleading statements include, but are not limited to, falsely representing that those reviews were truthful reviews by actual users of the Roomster platform when those reviews were not truthful reviews by actual users of the Roomster platform.

68.     Defendants' false and misleading acts and practices had a significant public impact.

**Count IX**
**Violations of the Colorado Consumer Protection Act (CCPA)**
**(Knowingly or recklessly engaging in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice, C.R.S. § 6-1-105(1)(kkk)[1])**
**(By Plaintiff State of Colorado against the Roomster Defendants)**

69.     Plaintiff State of Colorado incorporates herein by reference all allegations set forth above.

---

[1] Effective October 1, 2022, C.R.S. § 6-1-105(1)(kkk) will be recodified to C.R.S. 6-1-105(1)(rrr). Colo. Gen. Assembly HB 22-1287, § 27 (May 26, 2022). The statute's language will not change.

70.    In the course of their business or occupation, the Roomster Defendants violated, and may continue to violate the CCPA by knowingly or recklessly making false representations in advertisements and other communications.

71.    The Roomster Defendants' deliberately misleading, false, or fraudulent acts or practices include, but are not limited to:

a)    falsely representing that certain reviews of the Roomster platform were truthful reviews by actual users when those reviews were not truthful reviews by actual users of the Roomster platform;

b)    falsely representing that the listing on the Roomster platform are verified, authentic, or available.

**Count X**
**Violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)**
**(False Endorsements)**
**(By Plaintiff State of Florida Against All Defendants)**

72.    As set forth in Paragraphs 1 through 46 above, which allegations are incorporated as if set forth herein, in the course of Defendants' trade or commerce, Defendants have committed acts and practices that are unfair or deceptive in violation of FDUTPA.

73.    Section 501.204(1), Florida Statutes, declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

74.    Section 501.203(8), Florida Statutes, defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct

of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity."

75.     Through the means described above, Defendants have represented, directly or indirectly, expressly or by implication, that certain reviews of the Roomster platform were truthful reviews by actual users of the Roomster Defendants' services.

76.     In truth and in fact, in numerous instances in which the Defendants have made the representations set forth in Paragraph 75 of this Complaint, the reviews of the Roomster platform were not truthful reviews by actual users of the platform, but instead were fabricated by one or more third parties who were paid to generate reviews.

77.     Therefore, the making of the representations as set forth in Paragraph 75 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce in violation of Section 501.204(1), Florida Statutes.

78.     Shriber, Zaks, and Martinez are personally liable for the unlawful acts and practices described above, as Shriber, Zaks, and Martinez have the authority and power to control or direct the conduct at issue herein and/or actually participated in and directed the conduct at issue herein.

**Count XI**
**Violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)**
**(Misrepresentations that Listings Are Verified, Authentic, or Available)**
**(By Plaintiff State of Florida Against the Roomster Defendants)**

79.     As set forth in Paragraphs 1 through 46 above, which allegations are incorporated as if set forth herein, in the course of the Roomster Defendants' trade or commerce, the Roomster Defendants have committed acts and practices that are unfair or deceptive in violation of FDUTPA.

24

80.     Section 501.204(1), Florida Statutes, declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

81.     Section 501.203(8), Florida Statutes, defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity."

82.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of services related to living arrangement listings, the Roomster Defendants, directly or through affiliates acting on their behalf and for their benefit, have represented, directly or indirectly, expressly or by implication, that the listings on their Roomster platform are verified, authentic, or available.

83.     The representations set forth in Paragraph 82 are false or misleading or were not substantiated at the time the representations were made.

84.     Therefore, the making of the representations as set forth in Paragraph 82 constitutes a deceptive act or practice in violation of Section 501.204(1), Florida Statutes.

85.     Shriber and Zaks are personally liable for the unlawful acts and practices of Roomster, as Shriber and Zaks have the authority and power to control or direct the conduct at issue herein and/or actually participated in and directed the conduct at issue herein.

**Count XII**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(Misrepresentations)**
**(By Plaintiff State of Illinois Against All Defendants)**

86.     Plaintiff State of Illinois alleges and incorporates by reference paragraphs 1 through 46 above as though fully set forth herein.

87.     In numerous instances, in connection with their website and corresponding mobile applications and posting of consumer reviews related to these products, and while engaged in a course of trade or commerce, Defendants have violated Section 2 of the Illinois Consumer Fraud Act, 815, ILCS 505/2, by representing to consumers, directly or indirectly, expressly or by implication, with the intent that consumers rely on the representations, that certain reviews of the Roomster platform were truthful reviews by actual users when in actuality those reviews were not truthful reviews by actual users of the Roomster platform.

**Count XIII**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(Misrepresentations)**
**(By Plaintiff State of Illinois against the Roomster Defendants)**

88.     Plaintiff State of Illinois alleges and incorporates by reference paragraphs 1 through 46 above as though fully set forth herein.

89.     In numerous instances, in connection with their website and corresponding mobile applications and posting of consumer reviews related to these products, and while engaged in a course of trade or commerce, the Roomster Defendants have violated Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, directly or through affiliates acting on their behalf and for their benefit, by representing, directly or indirectly, expressly or by implication, with the intent that consumers rely on the misrepresentations, that that the listings on the Roomster platform are verified, authentic, or available when such was not the case.

26

**Count XIV**
**Violations of the Massachusetts Consumer Protection Act**
**(Unfair or Deceptive Acts and Practices)**
**(By Plaintiff Commonwealth of Massachusetts Against All Defendants)**

90.     Plaintiff Commonwealth of Massachusetts realleges paragraphs 1 through 52 of this Complaint.

91.     Defendants falsely and deceptively represented, directly or indirectly, that certain reviews of the Roomster platform were truthful reviews by actual users of Roomster's services. This conduct constitutes unfair and deceptive acts and practices that violate the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §2, and rules and regulations promulgated thereunder, including 940 Mass. Code Regs. §§ 3.05(1) and 3.16(4).

**Count XV**
**Violations of the Massachusetts Consumer Protection Act**
**(Unfair or Deceptive Acts and Practices)**
**(By Plaintiff Commonwealth of Massachusetts Against the Roomster Defendants)**

92.     Plaintiff Commonwealth of Massachusetts realleges paragraphs 1 through 52 of this Complaint.

93.     The Roomster Defendants falsely and deceptively represented, directly or indirectly, that the housing listings on the Roomster platform are verified, authentic, or available. This conduct constitutes unfair and deceptive acts and practices that violate the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §2, and rules and regulations promulgated thereunder, including 940 Mass. Code Regs. §§ 3.05(1), 3.16(2) and (4), and 6.04(1)-(2).

**<u>CONSUMER INJURY</u>**

94.     Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, N.Y. Executive Law § 63(12) and N.Y. GBL §§ 349 and 350, California False Advertising Law and California Unfair Competition

27

Law, the CCPA, the FDUTPA, the Illinois Consumer Fraud Act, and the Massachusetts Consumer Protection Act. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that the Court:

A.      Enter a permanent injunction to prevent future violations of the FTC Act and Plaintiff States' laws by Defendants;

B.      Award monetary and other relief within the Court's power to grant, including restitution to injured consumers nationwide as provided under state law;

C.      Award Plaintiff States civil penalties for each violation of their respective state laws, including:

      1)      Pursuant to New York GBL § 350-d, award the State of New York civil penalties in an amount up to $5,000 for each violation of New York GBL §§ 349 and 350;

      2)      Pursuant to California Business and Professions Code section 17536, award California civil penalties of $2,500 for each violation of California Business and Professions Code section 17500, as proved at trial, and pursuant to California Business and Professions Code section 17206, award the State of California civil penalties of $2,500 for each violation of California Business and Professions Code section 17200, as proved at trial;

      3)      Pursuant to C.R.S. § 6-1-112(1)(a), award the State of Colorado civil penalties of up to $20,000 per violation of the CCPA;

28

4)      Pursuant to Section 501.2075, Florida Statutes, award the State of Florida civil penalties of up to $10,000 per violation of FDUTPA for any person who has willfully engaged in an unfair or deceptive act or practice, and pursuant to Section 501.2077, Florida Statutes, award the State of Florida civil penalties up to $15,000 per violation for any person willfully using an act or practice that violates FDUTPA which victimizes a senior citizen, or a person who has a disability, or is directed at a military servicemember or the spouse or dependent child of a military servicemember;

5)      Pursuant to Section 7 of the Illinois Consumer Fraud Act, 815 ILCS 505/7, award the State of Illinois civil penalties up to $50,000 per deceptive or unfair act or practice, and an additional amount of $50,000 for each act or practice found to have been committed with intent to defraud; and

6)      Pursuant to Massachusetts Gen. Laws ch. 93A, § 4, award the Commonwealth of Massachusetts civil penalties up to $5,000 for each violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2, and rules and regulations promulgated thereunder, including 940 Mass. Code Regs. §§ 3.05(1), 3.16(2) and (4), and 6.04(1)-(2);

D.      Award Plaintiff States attorneys' fees, costs, and expenses as provided under state law; and

E.      Award any additional relief as the Court determines to be just and proper.

Respectfully submitted,

**FOR THE FEDERAL TRADE COMMISSION:**

Dated:   8/30/22

ANGELEQUE P. LINVILLE (*pro hac vice application pending*)
alinville@ftc.gov; (404) 656-1354
VALERIE M. VERDUCE (*pro hac vice application pending*)
vverduce@ftc.gov; (404) 656-1355
Federal Trade Commission
233 Peachtree Street, Suite 1000
Atlanta, GA 30303
Facsimile: (404) 656-1379

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**FOR THE PEOPLE OF THE STATE OF CALIFORNIA:**


Dated: _____8/29/22_____          ROB BONTA
                                 Attorney General, State of California

                                 NICKLAS A. AKERS
                                 Senior Assistant Attorney General


                                 _____
                                 EMILY KALANITHI (NY 4191805)
                                 Deputy Attorney General
                                 emily.kalanithi@doj.ca.gov; (415) 510-3468
                                 JON F. WORM (*pro hac vice application pending*)
                                 Supervising Deputy Attorney General
                                 jon.worm@doj.ca.gov; (619) 738-9325
                                 CAROLINE E. WILSON (*pro hac vice application
                                 pending*)
                                 Deputy Attorney General
                                 callie.wilson@doj.ca.gov; (415) 229-0106

                                 California Department of Justice
                                 Office of the Attorney General
                                 455 Golden Gate Ave., 11th Fl.
                                 San Francisco, CA 94102

                                 Attorneys for Plaintiff
                                 PEOPLE OF THE STATE OF CALIFORNIA

**FOR THE STATE OF COLORADO:**

Dated: August 30, 2022

PHILIP J. WEISER
Attorney General
State of Colorado

ABIGAIL M. HINCHCLIFF (*pro hac vice application pending*)
First Assistant Attorney General
Abigail.Hinchcliff@coag.gov; (720) 508-6000
BRADY J. GRASSMEYER (*pro hac vice application pending*)
Assistant Attorney General
Brady.Grassmeyer@coag.gov; (720) 508-6000
1300 Broadway, 10th Floor
Denver, CO 80203

Attorneys for Plaintiff
STATE OF COLORADO

**FOR THE STATE OF FLORIDA:**

Dated: _8/29/22_

ASHLEY MOODY
Attorney General, State of Florida

Ryann H. Flack (*pro hac vice application pending*)
Ryann.Flack@myfloridalegal.com; (786) 792-6249
Miles Vaughn (*pro hac vice application pending*)
Miles.Vaugh@myfloridalegal.com; (813) 287-7257
Office of the Attorney General
Consumer Protection Division
SunTrust International Center
1 S.E. 3rd Avenue, Suite 900
Miami, FL 33131

Attorneys for Plaintiff
STATE OF FLORIDA

33

**FOR THE PEOPLE OF THE STATE OF ILLINOIS:**

Dated:  8-29-22

KWAME RAOUL
Attorney General of Illinois

CASSANDRA HALM (*pro hac vice application pending*)
Assistant Attorney General
Cassandra.Halm@ilag.gov; (217) 725-9591

ELIZABETH BLACKSTON (*pro hac vice application pending*)
Bureau Chief
Elizabeth.Blackston@ilag.gov; (217) 725-8649

Office of the Illinois Attorney General
500 South Second Street
Springfield, IL 62701

Attorneys for Plaintiff
THE PEOPLE OF THE STATE OF ILLINOIS

**FOR THE COMMONWEALTH OF MASSACHUSETTS:**

Dated:   _August 29, 2022_

MAURA HEALEY
Attorney General
Commonwealth of Massachusetts


Mychii Snape (MS1544)
Assistant Attorney General
Mychii.Snape@mass.gov; (617) 727-2200
Consumer Protection Division
Office of the Attorney General
One Ashburton Place
Boston, MA 02108, 18th Floor

Attorney for Plaintiff
COMMONWEALTH OF MASSACHUSETTS

**FOR THE PEOPLE OF THE STATE OF NEW YORK:**


Dated:    8/30/2022                          LETITIA JAMES
                                             Attorney General of the State of New York

                                                  S/ Melvin L. Goldberg

                                             _____

                                             MELVIN L. GOLDBERG (NY 1828284)
                                             Assistant Attorney General
                                             Melvin.Goldberg@ag.ny.gov; (212) 416-8296
                                             28 Liberty Street
                                             New York, New York 10005
                                             Facsimile: 212-416-6003

                                             Attorney for Plaintiff
                                             PEOPLE OF THE STATE OF NEW YORK

                                             and

                                             JANE M. AZIA
                                             Bureau Chief
                                             Consumer Frauds and Protection Bureau

                                             LAURA J. LEVINE
                                             Deputy Bureau Chief
                                             Bureau of Consumer Frauds and Protection

                                             Of Counsel for Plaintiff
                                             PEOPLE OF THE STATE OF NEW YORK