**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| STATE OF COLORADO, | |
| STATE OF FLORIDA, | Case No: 1:22-cv-7389 (CM) (SN) |
| PEOPLE OF THE STATE OF ILLINOIS, | |
| COMMONWEALTH OF MASSACHUSETTS, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION DISMISS** |
| and | |
| PEOPLE OF THE STATE OF STATE OF NEW YORK, | **ORAL ARGUMENT REQUESTED** |
| Plaintiffs, | |
| v. | |
| ROOMSTER CORP., a corporation, | |
| JOHN SHRIBER, individually and as an officer of Roomster Corp., | |
| ROMAN ZAKS, individually and as an officer of Roomster Corp., and | |
| JONATHAN MARTINEZ, individually and doing business as AppWinn, | |
| Defendants. | |

i

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL POSTURE ................................................................................................... 2

BACKGROUND ................................................................................................................. 3

    1.    Roomster Verifies Its Users and Listings to the Best of Its Ability ....................... 4
    2.    Roomster Is The Victim Of Jonathan Martinez's Fraud ........................................ 6

ARGUMENT ..................................................................................................................... 8

    I.    THE FTC'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ............. 8

        A.    There Is No Live Case Or Controversy With Respect To The FTC's Claims .................................................................................. 8

        B.    The FTC Fails To Adequately Allege That The Roomster Defendants Are Violating, Or Are About To Violate Section 5(a) Of The FTC Act .............................................................................. 9

        C.    The FTC Lacks The Constitutional Authority To Initiate Litigation Seeking Injunctive Relief ......................................................... 11

    II.    STATE PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ........................... 12

        A.    The Court Should Not Exercise Supplemental Jurisdiction Over State Plaintiffs' Claims ................................................................. 12

        B.    State Plaintiffs Fail To Plead That Martinez's Reviews Qualify As A Deceptive Act ....................................................................... 15

        C.    An Order Permitting Recovery Of Nationwide Restitution Pursuant To NY GBL §§ 349, 350 And NY Executive Law § 63(12) Would Violate The Dormant Commerce Clause ................................................. 17

        D.    The NY AG Fails To State A Claim For Restitution Under NY GBL §§ 349, 350 And NY Executive Law § 63(12) ................................ 20

    III.    THE ROOMSTER DEFENDANTS ARE IMMUNE FROM LIABILITY PURSUANT TO SECTION 230 OF THE COMMUNICATION DECENCY ACT ................................................................................ 22

CONCLUSION .................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alphas Co. of N.Y. Inc. v. Hunts Point Terminal Produce Coop.*,
    No. 1:14-cv-00145, 2017 U.S. Dist. LEXIS 70959 (S.D.N.Y. May 9, 2017) ........................14

*AMG Cap. Mgmt., LLC v. FTC*,
    141 S. Ct. 1341 (2021) ................................................................................................1, 8, 9, 13

*Axon v. Florida's Nat. Growers, Inc.*,
    813 F. App'x 701 (2d Cir. 2020) ...........................................................................................16

*Azuity Pharms., Inc. v. Edge Pharma, LLC*,
    45 F.4th 479 (1st Cir. 2022) ..................................................................................................17

*Barr v. Am. Ass'n of Pol. Consultants*,
    140 S. Ct. 2335 (2020) ...........................................................................................................12

*Bowsher v. Synar*,
    478 U.S. 714 (1986) ...............................................................................................................12

*Buckley v. Valeo*,
    424 U.S. 1 (1976) .............................................................................................................11, 12

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ...............................................................................................................14

*Casper Sleep, Inc. v. Nectar Brand LLC*,
    No. 18 Civ. 4459, 2020 U.S. Dist. LEXIS 174740 (S.D.N.Y. 2020) ....................................16

*City Carting, Inc. v. N.Y.C. Bus. Integrity Comm'n*,
    No. 14 Civ. 8582, 2014 U.S. Dist. LEXIS 165634 (S.D.N.Y. Nov. 13, 2014) ......................18

*Cline v. TouchTunes Music Corp.*,
    211 F. Supp. 3d 628 (S.D.N.Y. 2016) ...................................................................................21

*Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*,
    332 F. Supp. 3d 729 (S.D.N.Y. 2018) ...................................................................................20

*Cosgrove v. Or. Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021) .....................................................................................7

*Cullen v. Netflix, Inc.*,
    880 F. Supp. 2d 1017 (N.D. Cal. 2012) .................................................................................17

*Davis v. HSBC Bank*,
    691 F.3d 1152 (9th Cir. 2012) .........................................................................................15, 16

*Edmunson v. P&G*,
    No. 10-CV-2256, 2011 U.S. Dist. LEXIS 53221 (S.D. Cal. May 17, 2011) ..........................17

*Eeastern Profit Corp. v. Strategic Vision US LLC*,
    No. 18-cv-2185, 2021 U.S. Dist. LEXIS 116334 (S.D.N.Y. June 22, 2021) ........................18

*Entretelas Americanas S.A. v. Soler*,
  No. 19 Civ. 03658, 2020 U.S. Dist. LEXIS 20692 (S.D.N.Y. Feb. 3, 2020) ........................14

*Eric M. Berman v. City of N.Y.*,
  895 F. Supp. 2d 453 (E.D.N.Y. 2012) *vacated and remanded on other
  grounds* by 796 F.3d 171 ...............................................................................................18

*Fishon v. Peloton Interactive, Inc.*,
  No. 19 cv-11711, 2021 U.S. Dist. LEXIS 129318 (S.D.N.Y. July 12, 2021) ..................20, 22

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019)..............................................................................................23

*Freedom Holdings, Inc. v. Spitzer*,
  357 F.3d 205 (2d Cir. 2004)............................................................................................18

*FTC v. AdvoCare Int'l, L.P.*,
  No. 4:19-CV-715, 2020 WL 6741968 (E.D. Tex. Nov. 16, 2020)..........................................9

*FTC v. Evans Prod. Co.*,
  775 F.2d 1084 (9th Cir. 1985).............................................................................................9

*FTC v. Facebook, Inc.*,
  560 F. Supp. 3d 1 (D.D.C. 2021)....................................................................................9, 10

*FTC v. Shire ViroPharma, Inc.*,
  917 F.3d 147 (3d Cir. 2019)...........................................................................................9, 10

*FTC v. Vyera Pharm., LLC*,
  479 F. Supp. 3d 31 (S.D.N.Y. 2020)..................................................................................10

*Goshen v. Mut. Life Ins. Co.*,
  774 N.E.2d 1190 (N.Y. 2002).....................................................................................20, 21

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
  425 F.3d 158 (2d Cir. 2005)............................................................................................18

*Healy v. Beer Inst., Inc*,
  491 U.S. 324 (1989).........................................................................................17, 18, 19

*Herrick v. Grindr, LLC*,
  306 F. Supp. 3d 579 (S.D.N.Y. 2018).....................................................................23, 24, 25

*Herrick v. Grindr LLC*,
  765 F. App'x 586 (2d Cir. 2019) ..........................................................................23, 24, 25

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender
  & Co.*,
  37 N.Y.3d 169 (N.Y. 2021) .............................................................................................15

*Humphrey's Ex'r v. United States*,
  295 U.S. 602 (1935)........................................................................................................11

*Kaufman v. Sirius XM Radio, Inc.*,
  474 F. App'x 5 (2d Cir. 2012) ..........................................................................................21

*Kolari v. N.Y.-Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006)..................................................................................14

*LabMD, Inc. v. FTC*,
    894 F.3d 1221 (11th Cir. 2018) ...............................................................................6

*Mashallah, Inc. v. W. Bend Mut. Ins.*,
    20 F.4th 311 (7th Cir. 2021) ...................................................................................15

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998).......................................................................................14

*Millennium Communs. & Fulfillment, Inc. v. Office of the AG, Dep't of Legal*
    *Affairs*,
    761 So. 2d 1256 (Fla. Dist. Ct. App. 2000) ...........................................................15

*Moor v. Alameda Cty.*,
    411 U.S. 693 (1973).................................................................................................13

*Mosha v. Facebook Inc.*,
    No. 20-cv-2608, 2021 U.S. Dist. LEXIS 12306 (S.D.N.Y. Jan. 22, 2021) ...........23

*New York v. Amazon.com, Inc.*,
    550 F. Supp. 3d 122 (S.D.N.Y. 2021).....................................................................13

*Pa. Pub. Sch. Emp. Ret. Sys. v. Morgan Stanley & Co.*,
    772 F.3d 111 (2d Cir. 2014)....................................................................................13

*Pease v. City of N.Y.*,
    No. 19 Civ. 7693, 2021 U.S. Dist. LEXIS 120030 (S.D.N.Y. June 28, 2021).......14

*Pentair Water Treatment (OH) Co. v. Cont'l Ins.*,
    No. 08 Civ. 3604, 2009 WL 1119409 (S.D.N.Y. Apr. 21, 2009)...........................21

*People v. Direct Revenue, LLC*,
    862 N.Y.S.2d 816 (Sup. Ct. N.Y. Cty. 2008) ........................................................20

*Perret v. Wyndham Vacation Resorts, Inc.*,
    889 F. Supp. 2d 1333 (S.D. Fla. 2012) ..................................................................16

*Phillips v. 180 Bklyn Livingston, LLC*,
    No. 17 Civ. 325, 2017 U.S. Dist. LEXIS 75154 (E.D.N.Y. May 17, 2017)...........13

*Renfro v. Champion Petfoods USA, Inc.*,
    25 F.4th 1293 (10th Cir. 2022)..........................................................................15, 17

*Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*,
    136 F. Supp. 3d 911 (N.D. Ill. 2015) .....................................................................16

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020).......................................................................................11, 12

*Sharpe v. Puritan's Pride, Inc.*,
    No. 16-cv-06717, 2019 U.S. Dist. LEXIS 6526 (N.D. Cal. Jan. 14, 2019).......21, 22

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,
    642 F. Supp. 2d 167 (S.D.N.Y. 2009).....................................................................22

*Stuart v. Cty. of Nassau*,
  No. 17-CV-6831, 2021 U.S. Dist. LEXIS 66206 (E.D.N.Y. Apr. 5, 2021) ...........................14

*Stuart v. Cty. of Nassau*,
  No. 21-1187-cv, 2022 U.S. App. LEXIS 17027 (2d Cir. June 21, 2022).................................14

*Tomasella v. Nestlé USA, Inc.*,
  364 F. Supp. 3d 26 (D. Mass. 2019) ................................................................................15, 16

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015)..................................................................................3

*Willard v. Tropicana Mfg. Co.*,
  577 F. Supp. 3d 814 (N.D. Ill. 2021) ...................................................................................16

*Williams v. Burger King Corp.*,
  No. 19-24755, 2020 U.S. Dist. LEXIS 158249 (S.D. Fla. July 20, 2020)..............................16

*Wright v. Publishers Clearing House, Inc.*,
  439 F. Supp. 3d 102 (E.D.N.Y. 2020) .................................................................................21

**Statutes**

1 Annals of Cong. 463 (1789)...............................................................................................12

15 U.S.C § 45(a) .............................................................................................................9, 10

15 U.S.C. § 53(b).......................................................................................1, 8, 9, 10, 11, 12

15 U.S.C. § 41 ....................................................................................................................11

15 U.S.C. § 57 ....................................................................................................................12

28 U.S.C. § 1367...........................................................................................................12, 13

47 U.S.C. § 230....................................................................................................22, 23, 24, 25

Federal Lands Right-of-Way Act, Pub. L. No. 93-153, 87 Stat. 576 (1973)................................11

Fed. R. Civ. P. 12(b)(6)......................................................................................................1, 7

N.Y. Exec. Law § 63(12) ..................................................................................2, 13, 17, 20, 22

N.Y. Gen. Bus. Law § 349.............................................................................2, 16, 17, 20, 21, 22

N.Y. Gen. Bus. Law § 350.............................................................................2, 16, 17, 20, 21, 22

U.S. Const. Art. I § 8(3)......................................................................................................17

U.S. Const. Art. II § 3 ........................................................................................................12

**Other Authorities**

Brok, *AppWinn Review: Paid to Review Apps Scam?,* Full Time Job From Home
  (Aug. 21, 2017), https://fulltimejobfromhome.com/appwinn-review-paid-to-
  review-apps-scam/ (last visited Oct. 24, 2022)........................................................................7

*States Sue Rental Listing Platform Roomster and its Owners for Duping
Prospective Renters with Fake Reviews and Phony Listings*, FTC (Aug. 30,
2022), https://www.ftc.gov/news-events/news/press-releases/2022/08/ftc-
states-sue-rental-listing-platform-roomster-its-owners-duping-prospective-
renters-fake-reviews (last visited Oct. 30, 2022)...................................................................7

*How It Works*, AppWinn,
https://web.archive.org/web/20151121085939/http://appwinn.com/index.php/
how-it-works (as it existed on Nov. 21, 2015)........................................................................7

Michael Simon, *The plying game: An inside look at the voracious, insatiable
world of App Store reviews*, Macworld (Apr. 1, 2015, 8:30 PM),
https://www.macworld.com/article/225236/the-plying-game-an-inside-look-
at-the-voracious-and-insatiable-world-of-app-store-reviews.html (last visited
Oct. 30, 2022) ........................................................................................................................6

*Notice Regarding Dispute Resolution*, Roomster,
https://www.roomster.com/terms (last visited Oct. 27, 2022) ................................................4

*Homepage*, Roomster, https://www.roomster.com (last visited Oct. 27, 2022) .........................2, 3

*Terms of Use*, Roomster (2022) https://www.roomster.com/terms (last visited Oct.
27, 2022) ...............................................................................................................................3

Defendants Roomster Corp. ("Roomster"), John Shriber ("Shriber"), and Roman Zaks ("Zaks") (collectively, the "Roomster Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint ("Compl.," ECF No. 4) of the Federal Trade Commission (the "FTC") and the Attorneys Generals of the States of California ("CA AG"), Colorado ("CO AG"), Florida ("FL AG"), Illinois ("IL AG"), New York  ("NY AG") and the Commonwealth of Massachusetts ("MA AG") ("State Plaintiffs," together with the FTC, the "Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion" or "Mot.").

## PRELIMINARY STATEMENT

The FTC's goal in this case is plain—assert conclusory allegations of deceptive acts or practices based on a stale, superficial investigation to extract monetary damages from the Roomster Defendants in contravention of the law. By bootstrapping the State Plaintiffs' claims to its own, the FTC undoubtedly seeks to circumvent the Supreme Court holding in *AMG Cap. Mgmt., LLC v. FTC*, where the Court held that "§13(b)'s 'permanent injunction' language does not authorize the [FTC] directly to obtain court-ordered monetary relief." 141 S. Ct. 1341, 1347 (2021). But the face of the Complaint demonstrates that the Roomster Defendants have ceased all conduct that Plaintiffs allege to be improper, which prohibits the FTC from obtaining the injunctive relief it seeks here. *See* Section 13(b) of the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 53(b) ("Section 13(b)"). Nonetheless, the Roomster Defendants are willing to stipulate to the injunctive relief that the FTC seeks herein—the only relief it is legally permitted to seek— and remand the State Plaintiffs' claims so that they may proceed in their respective state courts. *See infra* § II.A.

In all events, the Complaint should be dismissed, in whole or in part, for a host of additional, independent reasons: *First*, as to the FTC, it lacks the constitutional authority to initiate

this suit (*see infra* § I.C); *Second*, as to the State Plaintiffs, subjective, user-provided reviews do not qualify as deceptive acts under the applicable state laws (*see infra* § II.B); *Third*, because Roomster acts *only* as an intermediary between its users, an order permitting the NY AG to recover "nationwide" restitution would violate the dormant Commerce Clause (*see infra* § II.C); *Fourth*, the NY AG fails to state a claim under NY GBL §§ 349, 350 and Executive Law § 63(12) because, among other things, the Complaint is devoid of *any* allegations detailing the locations of the allegedly deceived consumers or the related underlying transactions (*see infra* § II.D); and *Fifth*, a close reading of the Complaint demonstrates that the alleged injuries for which Plaintiffs seek redress actually stem from user listings and reviews, for which the Roomster Defendants cannot be held liable under the Communication Decency Act ("CDA"). *See infra* § III.

In consideration of all of the foregoing, the Roomster Defendants respectfully request dismissal of the Complaint in its entirety.

## PROCEDURAL POSTURE

Roomster is an interactive internet-based room and roommate finder started by Shriber and Zaks in 2003. *See* Compl. ¶ 3. In January 2020, the FTC launched a limited civil investigation into Roomster—consisting solely of subpoenaing documents and requesting interrogatory responses — to determine, among other things, whether it used deceptive or unfair practices in its marketing. *See id.* ¶¶ 38, 45-46. Roomster cooperated with the investigation, answered the interrogatories and produced thousands of pages of responsive documents. Importantly, Roomster also removed from its platform the content about which the FTC objected, including the representation on its mobile application ("App") that Roomster has "millions of verified listings" (*see id.* ¶ 24) and that Roomster "mak[e][s] sure the Roomster profiles and the listings on the site are complete, accurate, updated and yes. . . authentic." *Compare id.* ¶ 23 *with Homepage*, Roomster,

https://www.roomster.com (last visited Oct. 27, 2022) (including link to download Roomster's App)[1]; *see also* Compl. ¶¶ 3-4, 22.

Nonetheless, the FTC and the State Plaintiffs now seek injunctive and monetary relief for conduct that has already ceased pursuant to their respective statutes prohibiting deceptive and unfair trade practices. The allegations rest on two theories: the Roomster Defendants (1) implied that "certain" unidentified user reviews about Roomster were truthful, when "in fact" some were "fabricated by one or more third parties who were paid to generate [them]" (*see* Compl. ¶¶ 47-49); and (2) represented that user listings are "verified, authentic, or available" when some are not. *See id.* ¶¶ 50-52.

## BACKGROUND

Roomster's platform serves as an intermediary between individuals who are seeking rentals, sublets, and roommates. *See id.* ¶¶ 6, 21. Accordingly, much of the content included on Roomster's platform is user-created listings. With under 15 employees, Roomster is a lean and developing technology company with a minor foothold in a highly competitive market. All of Roomster's employees work remotely and some, internationally, with its anti-fraud team operating from the State of Pennsylvania and Turkey and its technology team working from the Ukraine.

The primary source of Roomster's revenue is paid subscriptions. Like many interactive computer services, Roomster's users do not "pay for access to rental information" because the Roomster membership is free. *Compare id.* ¶ 4 *with Terms of Use*, Roomster, https://www.roomster.com/terms (last visited Oct. 27, 2022). Payment is only required if a user elects to upgrade to a paid subscription, which allows users to access additional features such as: a private

---

[1] "[A] Court may take judicial notice of information publicly announced on a party's website. . . ." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (citation omitted).

mailbox for sending and receiving messages from other users; access to other user's provided social media profiles; and text or call options for contacting non-paying or free users. *See Notice Regarding Dispute Resolution*, Roomster, https://www.roomster.com/terms (last visited Oct. 27, 2022). Thus, Roomster's financial health depends on delivering the best user experience possible and ensuring, to the best of its ability, that the listings included on the platform are real and accurate.

### 1. Roomster Verifies Its Users and Listings to the Best of Its Ability

Because Roomster's primary source of revenue comes from users *electively* upgrading their free accounts to paid subscriptions, Roomster, since its inception, has expended *significant* resources reevaluating and updating its anti-fraud programs, including its verification processes, in direct response to the dynamic methods fraudsters use to subvert the platform's anti-fraud protections. But like all interactive internet-based services, Roomster has been challenged by fraudsters' increasingly sophisticated methods.

Nonetheless, Plaintiffs engage in post-hoc nitpicking of Roomster's anti-fraud program to punish Roomster for the acts of third-party fraudsters. Plaintiffs narrowly focus their allegations on what Roomster did not do in a single instance to baselessly assert that Roomster's verification process was "non-existent." *See* Compl. ¶¶ 44, 25, 26. These are conclusory allegations that are insufficient to state a claim and are contradicted by the face of the Complaint, which demonstrates that Roomster *does* verify its users, and consequently its listings. *See id.* ¶ 24 (demonstrating Roomster's two-step verification account verification process).

The first step to creating a listing is creating an account, through a two-step verification process requiring provision of a mobile phone number and an email address. *See id.* Roomster then sends a text message to that phone number and an email to the email address to confirm that the user, in fact, owns or controls the provided mobile telephone number and email account. By sending a text message to the provided mobile number, Roomster also verifies that the designated

4

telephone does not correspond to a landline or VoIP (voice over IP) service, which fraudsters sometimes use to create multiple accounts to perpetuate fraud.[2]



*See supra* n.1. Thus, Plaintiffs' assertion that Roomster posts listings "immediately upon request" is contradicted by the Complaint itself. *Compare id.* ¶ 25 *with id*. ¶ 24. Although a listing may appear to go live to a user "immediately", in fact, it is not published to the platform until both the provided email address and mobile phone number are verified. *Compare id*. ¶ 25.

These account creation verifications are only the first layer of protection Roomster uses to ensure its users and listings are authentic. *See id*. ¶ 23. After an account is created, the account and all subsequent listings are subjected to *continuous* monitoring by Roomster. Thus, even if Roomster does not "contact[ ] the lister to verify the address, the specifications, or the legitimacy of the email or other personal information of the lister," Plaintiffs' claim that  Roomster "do[es] not verify listings or ensure that their listings are real or authentic" is conclusory, contradicted by the allegations set forth in the Complaint and insufficient to state a claim. *See id*. ¶ 25-26.

Indeed, the Roomster Defendants have always shared Plaintiffs' goal of protecting its users from fraudsters and have always done their best to quickly adapt Roomster's antifraud programs to the shifting challenges posed by increasingly sophisticated fraudsters. Ultimately, Plaintiffs'

---

[2] For a fee, a user can also verify their account by using a driver's license and passport, but such verification is not required to use the platform.

allegations amount to nothing more than a retroactive attempt to "micromanag[e]" the details of Roomster's anti-fraud program "in accordance with [its] wishes." *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1237 (11th Cir. 2018).

### 2.   Roomster Is The Victim Of Jonathan Martinez's Fraud

Like many businesses with an internet presence, Roomster hired and relied on outside marketing vendors to boost its profile. Accordingly, the Roomster Defendants do not deny that Roomster hired Martinez and AppWinn in 2016 to, among other things, boost Roomster's presence on the Android and Apple App stores by *encouraging* consumers to download Roomster's App and submit *authentic* reviews after using the service.[3] *See* Compl. ¶¶ 4, 27. There is nothing illegal or improper about this practice.

In fact, Roomster first learned about AppWinn from a 2015 MacWorld article where Martinez represented that AppWinn obtains reviews for companies by offering "raffles for anyone who agrees to download and rate certain apps" and that "all of the ratings and reviews are unbiased and represent real feedback from iOS users." *See* Michael Simon, *The plying game: An inside look at the voracious, insatiable world of App Store reviews*, Macworld (Apr. 1, 2015, 8:30 PM), https://www.macworld.com/article/225236/the-plying-game-an-inside-look-at-the-voracious-and-insatiable-world-of-app-store-reviews.html (last visited Oct. 30, 2022).

Throughout Roomster's approximately two-year relationship with AppWinn, Martinez *continuously* represented that all the downloads and reviews purchased were sourced from legitimate users who were honestly testing Roomster's App in exchange for prizes. Indeed, until

---

[3] On or about August 30, 2022, Plaintiffs and Martinez entered into a Stipulated Order for Permanent Injunction, Monetary Judgement, and Other Relief, whereby Martinez "neither admit[ted] nor denie[d] any of the allegations in the Complaint" and settled the claims asserted against him by Plaintiffs in exchange for, among other things, "fully cooperat[ing]" with Plaintiffs in this case. *See* ECF No. 31 (entered Sept. 6, 2022) (the "Stipulated Order").

the FTC began investigating Roomster, the Roomster Defendants had no reason to believe Martinez's or App Winn's marketing representations concerning the authenticity of purchased reviews were false. *See   How   It   Works*,   AppWinn, https://web.archive.org/web/20151121085939/http://appwinn.com/index.php/how-it-works (as it existed on Nov. 21, 2015) (explaining that AppWinn users get rewarded by "providing [] honest feedback");[4] Brok, *AppWinn Review: Paid to Review Apps Scam?*, Full Time Job From Home (Aug. 21, 2017), https://fulltimejobfromhome.com/appwinn-review-paid-to-review-apps-scam/ (last visited Oct. 24, 2022) (determining that AppWinn is "[l]egitimate" and requires users to post a review including "what you liked and didn't like about the app"); *see also supra* n.1.

Ultimately, whether the reviews procured by Martinez for Roomster were fake remains an issue of fact. Contrary to what the FTC incorrectly asserted in its August 30, 2022 press release, Martinez *did not admit to fraud* in the Stipulated Order. *Compare States Sue Rental Listing Platform Roomster and its Owners for Duping Prospective Renters with Fake Reviews and Phony Listings*, FTC (Aug. 30, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/08/ftc-states-sue-rental-listing-platform-roomster-its-owners-duping-prospective-renters-fake-reviews (last visited Oct. 30, 2022) (falsely asserting that the Stipulated Order required Martinez to "identify the fake reviews" for Apple and Google) *with* ECF No. 31 at "Findings," ¶ 3 (plainly stating that Martinez "neither admit[ted] nor denie[d]" the allegations in the Complaint) and § III (ordering that Martinez notify Apple and Google that "Roomster paid [Martinez]. . . for reviews" and identify them); *see also supra* n.1.

---

[4]*Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 581 n.5 (S.D.N.Y. 2021) (in context of Rule 12(b)(6) motion, court permitted to take judicial notice of "archival copies of Defendant's website using the Internet Archive Wayback Machine").

**ARGUMENT**[5]

## I.   THE FTC'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

### A.   There Is No Live Case Or Controversy With Respect To The FTC's Claims

The FTC seeks "permanent injunctive relief *and other relief*" from this Court. *See* Compl.,

¶ 1 (emphasis added); *see also* Compl., Prayer for Relief ¶ B (vaguely requesting that this Court

"[a]ward monetary and other relief within the Court's power to grant" without explicitly limiting

this request for relief to the State Plaintiffs). However, the only form of relief the FTC can obtain

in this action is injunctive relief. *See AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1348 (2021)

("*AMG*"). Because, in 2018, the Roomster Defendants ceased all conduct that the FTC alleges to

be improper (*see infra* § I.B) they are willing to stipulate to "a permanent injunction to prevent

future violations of the FTC Act." *See* Compl., Prayer for Relief. Accordingly, with respect to the

FTC's claims, there is no live case or controversary for this Court to adjudicate.

The FTC's goal in this matter is plain: *circumvent Supreme Court precedent that forbids it*

*from seeking monetary relief by bootstrapping the State Plaintiffs' claims to its own*. It is evident

that when the FTC commenced its investigation into Roomster in January 2020, it hoped to recover

monetary damages from Roomster. But a little over a year into the FTC's investigation, the

Supreme Court in *AMG* held that "§13(b)'s 'permanent injunction' language does not authorize

the [FTC] directly to obtain court-ordered monetary relief." 141 S. Ct. at 1347.

*AMG* could not be clearer. Accordingly, this Court should reject the FTC's attempt to

circumvent Supreme Court precedent prohibiting it from recovering monetary damages, permit

the Roomster Defendants to stipulate to the injunctive relief the FTC seeks herein, and remand the

State Plaintiffs' claims so that they may proceed in their respective state courts. *See infra* § II.A.

---

[5] In accordance with Section D of this Court's Individual Rules, the Roomster Defendants have
omitted "the standards for granting . . . a motion to dismiss."

**B.  The FTC Fails To Adequately Allege That The Roomster Defendants Are Violating, Or Are About To Violate Section 5(a) Of The FTC Act**

The FTC brings its Section 5(a) claims pursuant to Section 13(b) of the FTC Act. *See* Compl. ¶¶ 49, 52; *see also* 15 U.S.C § 45(a) ("Section 5(a)"). But that provision allows the FTC to obtain an injunction only if the defendant "*is violating*, or *is about to violate*, any provision of law enforced by the [FTC]." 15 U.S.C. § 53(b) (emphasis added). Section 13(b) contemplates "relief that is *prospective, not retrospective*." *AMG*, 141 S. Ct. at 1348 (emphasis added). Section 13(b) therefore "does not permit the FTC to bring a claim based on long-past conduct without some evidence that the defendant 'is' committing or 'is about to' commit another violation." *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 156 (3d Cir. 2019); *FTC v. Evans Prod. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) (holding that Section 13(b) "contemplate[s] ongoing or future violations" and thus "an injunction will issue only if the wrongs are ongoing or likely to recur").

At the pleading stage, stating a Section 5(a) claim requires more than simply alleging "a violation in the distant past and a vague and generalized likelihood of recurrent conduct." *Shire ViroPharma, Inc.*, 917 F.3d at 158-59; *see also FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 26-27 (D.D.C. 2021) ("conclusory allegation" that "Facebook is likely to reinstitute [unlawful] policies" based on its past conduct is "insufficient to establish the requisite imminence" (citation omitted)). That is particularly true when the alleged "channel of misconduct" is either "defunct" or "reformed." *FTC v. Advocare Int'l, L.P.*, No. 4:19-CV-715-SDJ, 2020 U.S. Dist. LEXIS 213865, at *16 (E.D. Tex. Nov. 16, 2020).

Here, the FTC has not adequately alleged that the Roomster Defendants are "violating, or [are] about to violate" Section 5 (a) of the FTC Act. Instead, virtually all the FTC's allegations are untethered to the present or near future—which is precisely what Section 13(b) requires. Where the Complaint does tie allegations to a specific point in time, the allegations—on their face—

indicate that the conduct has ceased. For example, the Complaint includes a screenshot from Roomster's alleged mobile application that Plaintiffs admit was removed after "[Roomster] received notice of [the FTC's] investigation," which was in early 2020. *See* Compl. ¶ 24. The FTC's heavy reliance on past-tense language throughout the Complaint and its injunction against Martinez make it plain the Complaint is "insufficient to establish the requisite imminence" under Section 13(b). *Facebook*, 560 F. Supp. at 26-27; *see also* Compl. ¶¶ 32 (emphasis added) ("[f]or over four years, the Roomster Defendants *engaged* in . . . 'drip campaigns'. . . ."), 45 (Roomster Defendants allegedly "*engaged* in their unlawful acts and practices repeatedly . . . they *engaged* in their unlaw acts and practices willfully and knowingly . . . they *continued* their unlawful acts or practice despite knowledge of numerous complaints . . . .").

The Complaint also acknowledges that Roomster has "cease[d] doing business" with Martinez and AppWinn, the source of the allegedly "fake" reviews purchased by Roomster. *See* Compl. ¶ 46. Indeed, the FTC is indisputably aware that Martinez and AppWinn ceased selling reviews to Roomster because they have been permanently enjoined from engaging in this conduct. *See* ECF No. 31. Thus, the only allegations that arguably support the FTC's False Endorsements claim involve Martinez selling reviews to Roomster in the past. *See, e.g.*, Compl. ¶¶ 27, 29-41.

In short, the FTC's Section 5(a) claims rests on "long-past conduct" and conclusory allegations "that a violation could recur at some future point." *Shire ViroPharma, Inc.*, 917 F.3d at 156, 159. That is insufficient to state a claim under Section 13(b). Thus, the FTC's Section 5(a) claims should be dismissed with prejudice. *See id.* at 159, n.17 (affirming the dismissal of the FTC's complaint because it provided "no evidence" in support of its "reason to believe" that the defendant was "about to violate" the law); *see also FTC v. Vyera Pharm., LLC*, 479 F. Supp. 3d 31, 43-44 (S.D.N.Y. 2020) (distinguishing *Shire* because the *Vyera* defendants were "at that very

moment actively engaged in" the alleged violations of law).

### C.  The FTC Lacks The Constitutional Authority To Initiate Litigation Seeking Injunctive Relief

Section 13(b) of the FTC Act purports to authorize the FTC to enforce the FTC Act by suing violators in district court for permanent injunctive relief. *See* 15 U.S.C. § 53(b); Compl. ¶ 1. However, when Congress enacted 15 U.S.C. § 53(b) in the 1970s, it exceeded the limit on the powers that may be constitutionally vested in the FTC, an independent agency whose Commissioners cannot be removed at will by the President. *See* 15 U.S.C. § 41; *Humphrey's Ex'r v. United States*, 295 U.S. 602, 625-26 (1935) ("*Humphrey's Ex'r*"). The unconstitutionality of the FTC's litigation authority is compelled by the Supreme Court's interpretation of *Humphrey's Ex'r* in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) ("*Seila Law*"). As the Supreme Court recently emphasized in *Seila Law*, when *Humphrey's Ex'r* upheld the constitutionality of the FTC's independence, it reasoned that the FTC *as it existed in 1935* did not exercise *any* executive power. *See Seila Law*, 140 S. Ct. at 2198-200.

Nonetheless, in 1973, Congress gave the FTC power to seek permanent injunctive relief in the absence of an agency adjudication. *See* 15 U.S.C. § 53(b) (amended in Pub. L. No. 93-153, § 408(f), 87 Stat. 576, 592 (1973)). This grant of authority, however, is incompatible with the FTC's status as a valid independent agency. Given that the FTC's independence was upheld because the agency in 1935 exercised "only . . . quasi-legislative or quasi-judicial powers," *Seila Law*, 140 S. Ct. at 2198, Congress cannot later give the FTC indisputably executive powers. Yet that is precisely what Congress purported to do with the *law-enforcement powers* at issue here.

The power to file federal-court actions on behalf of the United States to enforce federal law through injunctive relief—as the FTC is doing here—is a "quintessentially executive power." *See id.* at 2200; *see also Buckley v. Valeo*, 424 U.S. 1, 113, 137-38 (1976) (per curiam) ("[a] lawsuit

is the ultimate remedy for a breach of the law, and it is to the President . . . that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed'" (quoting U.S. Const. art. II, § 3)). Thus, just as "conducting civil litigation in the courts of the United States for vindicating public rights" is an executive power that may not be granted to principal officers whom the President cannot appoint (*see id.* at 139-40) such litigation authority may not be granted to principal officers whom the President cannot remove to ensure "control[] [of] those who execute the laws." *See Seila Law*, 140 S. Ct. at 2197 (quoting 1 Annals of Cong. 463 (1789)); *see also id.* at 2199-200 (recognizing that for-cause removal restrictions for purely executive officials have been upheld only for certain "inferior officers with limited duties").

In short, Congress violated the Constitution when it amended the FTC Act to grant the independent FTC the executive litigation powers set forth in 15 U.S.C. § 53(b). That "unconstitutional statutory amendment[s] 'is a nullity' and 'void' when enacted," and thus grants no power that can be exercised here. *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335, 2353 (2020) (*AAPC*) (plurality op.) (citations omitted); *see Bowsher v. Synar*, 478 U.S. 714, 734-35 (1986) (invalidating executive powers unconstitutionally granted to the Comptroller General); 15 U.S.C. § 57 (FTC Act's severability clause). An independent agency such as the FTC that *purports to* wield substantial executive power—like the FTC purports to in this action—does so unconstitutionally, and thus its claims must be dismissed.

## II. STATE PLAINTIFFS' CLAIMS SHOULD BE DISMISSED

### A. The Court Should Not Exercise Supplemental Jurisdiction Over State Plaintiffs' Claims

A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). If the Court dismisses the FTC's claims, as it should, it will lack original jurisdiction over the State

Plaintiffs' claims because only the FTC's claims pose federal questions and there is no basis for diversity jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *see also* Compl. ¶ 7 (citing federal law as the sole basis for this Court's jurisdiction).[6]

Diversity jurisdiction "requires 'complete diversity,' i.e., all plaintiffs must be *citizens* of states diverse from those of all defendants." *Pa. Pub. Sch. Emp. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014) (emphasis added) (citation omitted). But "[t]here is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction" (*Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973)) unless the state is not the "real party in interest." *New York v. Amazon.com, Inc.*, 550 F. Supp. 3d 122, 130 (S.D.N.Y. 2021) (citation omitted). Here, the State Plaintiffs are unquestionably the "real part[ies] in interest" and thus, their presence destroys any diversity jurisdiction that may otherwise exist. *See, e.g.*, *id.* at 129, 131 (in an action brought by the NY AG under NY Executive Law § 63(12), New York State was the real party in interest because the State had financial and policy interests "in the outcome of the litigation separate from the personal interests of its citizens," including "securing an honest marketplace"). Thus, if the FTC's claims are dismissed, the Court will have "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

---

[6] Even if the FTC's claims survive, the Court should decline to exercise supplemental jurisdiction over the State Plaintiffs' claims because the FTC should not be permitted to circumvent Supreme Court precedent that forbids it from seeking monetary relief by bootstrapping the State Plaintiffs' claims to its own. *See AMG*, 141 S. Ct. at 1348. The FTC's attempt to skirt governing law presents exactly the sort of "exceptional circumstances" that give this Court "compelling reasons for declining" supplemental jurisdiction over the State Plaintiffs' claims. *See* 28 U.S.C. § 1367 (c)(4); *see, e.g.*, *Phillips v. 180 Bklyn Livingston, LLC*, No. 17 Civ. 325, 2017 U.S. Dist. LEXIS 75154, at *5 (E.D.N.Y. May 17, 2017) (finding "exceptional circumstances" warranted declining to exercise supplemental jurisdiction over claim brought under Americans with Disabilities Act where defendant had already remedied the alleged wrongs and the suit was plainly brought to extract a settlement).

In addition, the "values of judicial economy, convenience, fairness, and comity" balance in favor of the Court declining to exercise supplemental jurisdiction over the State Plaintiffs' claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation omitted). As the Supreme Court held in *Carnegie-Mellon Univ. v. Cohill*, when "'all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting 484 U.S. 343, 350 n.7 (1988)). Accordingly, "[a]s a general rule, 'when the federal claims are dismissed the state claims should be dismissed as well.'" *Stuart v. Cty. of Nassau*, No. 17-CV-6831, 2021 U.S. Dist. LEXIS 66206, at *11 (E.D.N.Y. Apr. 5, 2021) (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998)).

Thus, well-settled law indicates that cases in in the pleading stage are typically dismissed because such matters pose no issues of judicial economy or convenience. *See, e.g.*, *Alphas Co. of N.Y. Inc. v. Hunts Point Terminal Produce Coop.*, No. 1:14-cv-00145, 2017 U.S. Dist. LEXIS 70959, at *13-14 (S.D.N.Y. May 9, 2017) (courts "should generally decline supplemental jurisdiction" in such cases); *Stuart v. Cty. of Nassau*, No. 21-1187-cv, 2022 U.S. App. LEXIS 17027, at *4 (2d Cir. June 21, 2022) (affirming district court's decision to decline to exercise supplemental jurisdiction because the case was in its "infancy"); *Pease v. City of N.Y.*, No. 19 Civ. 7693, 2021 U.S. Dist. LEXIS 120030, at *53 (S.D.N.Y. June 28, 2021) ("Because the Court dismisses [the federal claims] at the pleading stage, the Court concludes that the relevant factors counsel in favor of declining jurisdiction over the remaining [state law] claims."); *Entretelas Americanas S.A. v. Soler*, No. 19 Civ. 03658, 2020 U.S. Dist. LEXIS 20692, at *33-34 (S.D.N.Y. Feb. 3, 2020) (explaining that all relevant factors favor dismissal, noting that "judicial economy is preserved as [the] action is only at its earliest stage"). In addition, considerations of comity also

weigh in favor of dismissal, as each of the State Plaintiffs' claims concern their respective state consumer protection statutes and their respective interests in seeking redress on behalf of their citizens. Thus, if the FTC's claims are correctly dismissed, this Court should decline to exercise supplemental jurisdiction and dismiss the State Plaintiffs' claims.

### B.  State Plaintiffs Fail To Plead That Martinez's Reviews Qualify As A Deceptive Act

With respect to Plaintiffs' claims concerning alleged false endorsements (*see* Compl. at Count I), Plaintiffs fail to state a claim that the reviews provided by Martinez are deceptive because they were not "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 178 (N.Y. 2021) (citation omitted).[7] To plead a claim, the reasonable consumer standard requires a probability that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the

---

[7] *See also Davis v. HSBC Bank*, 691 F.3d 1152, 1162 (9th Cir. 2012) ("To prevail under this standard, [a plaintiff] must 'show that members of the public are likely to be deceived by the advertisement.'" (citation omitted)); *Tomasella v. Nestlé USA, Inc.*, 364 F. Supp. 3d 26, 35 (D. Mass. 2019) (under Massachusetts' Consumer Protection Act, "to survive dismissal, Plaintiff must plausibly allege the potential deception of *reasonable* consumers" (alteration in original)); *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1305 (10th Cir. 2022) (affirming dismissal of claims brought under Colorado Consumer Protection Act § 6-1-105 where no reasonable consumer would have concluded general statements of quality were material misstatements of fact); *Millennium Communs. & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs*, 761 So. 2d 1256, 1264 (Fla. Dist. Ct. App. 2000) (under Florida's Unfair and Deceptive Trade Practices Act, a plaintiff must "establish that [defendant's acts] were likely to mislead consumers acting reasonably under the circumstances"); *Mashallah, Inc. v. W. Bend Mut. Ins.*, 20 F.4th 311, 322 (7th Cir. 2021) (under Illinois' Consumer Fraud and Deceptive Business Practices Act, "[c]onduct is deceptive 'if it creates a likelihood of deception or has the capacity to deceive' a 'reasonable consumer'" (citation omitted)).

statements. *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (citations omitted) (interpreting NY GBL §§ 349, 350).[8]

Here, it would be unreasonable for consumers to rely on *subjective user-supplied* reviews when upgrading their *free* Roomster account. This is particularly so given that the consumer base has an opportunity to use and evaluate Roomster's platform without paying a cent. It thus defies logic that *subjective* reviews in an App store would lead modern-day consumers to do anything but potentially investigate *other* subjective opinions, including 1-star reviews that Plaintiffs admit were equally available to consumers. *See* Compl. ¶ 41. This does not meet the standard of a deceptive act within the meaning of the State Plaintiffs' statutes, and thus, the State Plaintiffs' claims should be dismissed. *See, e.g.*, *Casper Sleep, Inc. v. Nectar Brand LLC*, No. 18 Civ. 4459, 2020 U.S. Dist. LEXIS 174740, at *16, 25 (S.D.N.Y. 2020) ("favorable reviews are not actionable misrepresentations because they are mere opinion"); *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1342 (S.D. Fla. 2012) (motion to dismiss FUDTPA claim granted where "most of the alleged misrepresentations Plaintiffs rely upon are nothing more than opinion"); *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 136 F. Supp. 3d 911, 918-19 (N.D. Ill. 2015) ("The statement must not be a subjective statement or mere puffery; the statement must be

---

[8] *See also Davis v. HSBC Bank*, 691 F.3d 1152, 1169 (9th Cir. 2012) (under California's Unfair Competition Law, the challenged "conduct 'is judged by the effect it would have on a reasonable consumer'" (citation omitted)); *Willard v. Tropicana Mfg. Co.*, 577 F. Supp. 3d 814, 831 (N.D. Ill. 2021) ("A statement is deceptive if it creates a likelihood of deception or has the capacity to deceive, in that it may mislead a reasonable consumer, as understood in light of all the information available to plaintiffs." (citation omitted)); *Williams v. Burger King Corp.*, No. 19-24755, 2020 U.S. Dist. LEXIS 158249, at *13 (S.D. Fla. July 20, 2020) (reasonable consumer standard "requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying customer'" (citation omitted)); *Tomasella v. Nestlé USA, Inc.*, 364 F. Supp. 3d 26, 35 n.4 (D. Mass. 2019) (reasonable consumer test "is a stricter standard than a test which considers whether a practice had the capacity to deceive the general public, which 'includes the ignorant, [the] unthinking, and the credulous'" (citation omitted)).

objectively verifiable by specific or absolute characteristics . . . . Here it cannot be said that any

reasonable person hearing the statement would believe that it was a fact and not a personal opinion

. . . .").[9]

### C. An Order Permitting Recovery Of Nationwide Restitution Pursuant To NY GBL §§ 349, 350 And NY Executive Law § 63(12) Would Violate The Dormant Commerce Clause

The NY AG seeks an order providing for "nationwide" restitution based on alleged

violations of NY Executive Law § 63(12) and NY General Business Law ("GBL") §§ 349 and 350

(collectively, "NY Consumer Protection Statutes"). *See* Compl. ¶ 15. If granted, such an order

would violate Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause") to

the extent it permits the NY AG to recover damages for conduct occurring wholly outside of the

State of New York. The Commerce Clause, which grants Congress the power "[t]o regulate

Commerce with foreign Nations and among the several States[,]" generally "protects against

inconsistent legislation arising from the projection of one state regulatory regime into the

jurisdiction of another State" through the so-called dormant Commerce Clause. *Healy v. Beer Inst.,*

*Inc.,* 491 U.S. 324, 326 (1989).

---

[9] *Edmunson v. P&G*, No. 10-CV-2256, 2011 U.S. Dist. LEXIS 53221, at *10-12 (S.D. Cal. May 17, 2011) ("An alleged misrepresentation must relate to an objectively, verifiable fact; subjective representations related to product superiority . . . are not actionable under [California's Unfair Competition Law and Consumers Legal Remedies Act]."); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1026 (N.D. Cal. 2012) (dismissing UCL and CRLA claims; statement that product is "superior" is "subjective representation," not an objectively verifiable fact (citation omitted)); *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1304 (10th Cir. 2020) (determining the statements Plaintiff alleged as false advertisements were the sort of subjective and "vague generalities that no reasonable person would rely on as assertions of particular facts" (citation omitted)); *Azuity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 504 n.12, 505 (1st Cir. 2022) (claim that Edge's product was "ideal" for use in a hospital setting not deceptive because the quality of being ideal is "vague" and "subjective" and cannot be measured objectively (citation omitted)).

The dormant Commerce Clause "limits state legislation that adversely affects interstate commerce" (*Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 168 (2d Cir. 2005)) because "[l]egislation that regulates wholly extraterritorial commerce implicates 'the Constitution's special concern . . . with the autonomy of the individual States within their respective spheres.'" *City Carting, Inc. v. N.Y.C. Bus. Integrity Comm'n*, No. 14 Civ. 8582, 2014 U.S. Dist. LEXIS 165634, at *9 (S.D.N.Y. Nov. 13, 2014) (quoting *Healy*, 491 U.S. 324, 335). Thus, a state statute is "invalid *per se* if it has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question." *Pryor*, 425 F.3d at 168 (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 219 (2d Cir. 2004)).

When determining whether the relief the NY AG seeks has the "practical effect" of controlling commerce occurring outside of New York in violation of the dormant Commerce Clause, the "critical question" is "where the transaction being regulated is consummated." *Eeastern Profit Corp. v. Strategic Vision US LLC*, No. 18-cv-2185, 2021 U.S. Dist. LEXIS 116334, at *71 (S.D.N.Y. June 22, 2021) (quoting *Eric M. Berman v. City of N.Y.*, 895 F. Supp. 2d 453, 483 (E.D.N.Y. 2012) *vacated and remanded on other grounds* by 796 F.3d 171).

> [I]f the transaction is consummated out of state, a state may not regulate it without violating the dormant Commerce Clause. This is the case regardless of whether some other aspect of the commercial activity occurs within the state—whether it be the use of the product or service within the state, the subsequent in-state sale of the product or service, prior negotiations or advertising in-state that lead to the formation of the contract out-of-state, or the fact that one of the parties is a state resident, a domestic corporation,  or has significant in-state contacts.

*Berman*, 895 F. Supp. 2d at 483 (citations omitted). Indeed, none of these "in-state 'hooks' will permit a state to regulate the extraterritorial commerce." *Id.*

Although the Complaint is devoid of any allegations indicating where consumers were injured, the NY AG seeks to impermissibly expand its jurisdiction and recover on behalf of New

York—regardless of where these transactions occurred or where these consumers were allegedly injured—presumably because Roomster is incorporated in New York. *See* Compl. ¶ 15. However, this "in-state hook" is insufficient, and the NY AG should be prohibited from regulating transactions occurring between Roomster users wholly outside of New York State. Roomster, like many interactive internet-based computer services, acts only as an intermediary for users to connect across the United States. By seeking "nationwide" restitution, the NY AG seeks to recover for consumers that downloaded and accessed Roomster outside of New York and sought living arrangement outside of New York. *See id.* ¶¶ 5, 13, 15, Prayer for Relief (B). The NY AG is not the appropriate authority to seek redress on behalf of these consumers for these wholly out-of-state transactions.

The "practical effect" of permitting the nationwide recovery the NY AG seeks must also "be evaluated . . . by considering how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation." *Healy*, 109 S. Ct. at 2494. Permitting the NY AG to recover restitution on behalf of the State of New York for transactions that occur on an interactive internet-based computer service such as Roomster would undoubtedly create a risk of double recovery between the states. The State Plaintiffs each seek restitution on behalf of itself, presumably for transactions occurring within its own borders—that is, the same relief New York seeks via "nationwide restitution". *See* Compl. ¶ 15. There is also the question of the states that are not party to this action. Roomster operates in all 50 states—why should the NY AG be able to recover on behalf of New York for alleged injuries that occurred to consumers who consummated transactions in

19

states absent from this proceeding? Thus, the NY AG's claims should be dismissed because the order it seeks herein violates the dormant Commerce Clause.

### D. The NY AG Fails To State A Claim For Restitution Under NY GBL §§ 349, 350 And NY Executive Law § 63(12)

By their plain terms, the NY Consumer Protection Statutes are territorially limited to transactions that occur within the State of New York. Accordingly, a party is only liable under Section 349 when unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" occur "*in this state*." NY GBL § 349 (emphasis added). Likewise, Section 350 liability is limited to unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*." NY GBL § 350 (emphasis added).[10] Thus, "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *People v. Direct Revenue, LLC*, 862 N.Y.S.2d 816, 816 (Sup. Ct. N.Y. Cty. 2008) (quoting *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002)). When determining whether dismissal is appropriate, "the question is whether 'some part of the underlying transaction . . . occur[red] in New York State.'" *Fishon v. Peloton Interactive, Inc.*, No. 19 cv-11711, 2021 U.S. Dist. LEXIS 129318, at *7 (S.D.N.Y. July 12, 2021) (citation omitted).

Here, the Complaint includes *no* allegations indicating the details or location(s) of the allegedly deceived consumers or the related underlying transactions, "fatal defect[s]" that require dismissal of the NY AG's claims. *See, e.g.*, *People v. Direct Revenue, LLC*, 862 N.Y.S.2d 816, 816 (Sup. Ct. N.Y. Cty. 2008) (NY AG's petition dismissed where petition "fail[ed] to specify

---

[10] *See Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 784 (S.D.N.Y. 2018) ("elements of a claim under Section 63(12) are entirely encompassed by the elements of deceptive acts or practices under the . . . NY GBL § 349"). *See also Goshen*, 774 N.E.2d at 1195 n.1 ("General Business Law § 350 provides that 'false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.' The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349.").

which transactions were deceptive" and failed "to state where the transactions occurred"). Thus, on these grounds alone, the NY AG's claims should be dismissed.

Relatedly, because the Complaint is devoid of any allegations detailing the locations of the allegedly deceived consumers or the related underlying transactions at issue, the allegations do not plausibly demonstrate that "the deception of a consumer . . . occur[ed] in New York." *Goshen*, 774 N.E.2d at 1195. *See also Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 634-35 (S.D.N.Y. 2016) (motion to dismiss granted with respect to "plaintiffs who used TouchTunes products in Montana and North Dakota and . . . allegedly were deceived by misrepresentations or omissions they encountered solely within those states"); *Sharpe v. Puritan's Pride, Inc.*, No. 16-cv-06717, 2019 U.S. Dist. LEXIS 6526, at *10-11 (N.D. Cal. Jan. 14, 2019) ("Imposing liability under the GBL [§§ 349/350] simply because an online transaction was hosted or processed in New York 'would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law § 349.'" (citation omitted)).

The fact that Roomster is incorporated in New York does not cure the glaring pleading defects in the NY AG's claims. *See, e.g.*, *Pentair Water Treatment Co. v. Cont'l Ins., Inc.*, 2009 U.S. Dist. LEXIS 39932, at *11 (S.D.N.Y. Apr. 21, 2009) ("the fact that Fidelity's principal place of business is in New York is not sufficient to render GBL § 349 applicable"). To the extent the NY AG "allege[s] that [the Roomster Defendants'] formulated the [alleged] scheme . . . in New York, the insufficiency of such a pleading is [also] made clear by *Goshen*." *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012). Indeed, "[i]t is well-settled" that there is no "standing to bring a Section 349 [or Section 350] claim just because he or she transacted with a seller who resides in New York." *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110

(E.D.N.Y. 2020). *See also Sharpe*, 2019 U.S. Dist. LEXIS 6526, at *9-10 ("The [New York] Court of Appeals expressly rejected the theory that the GBL applies to deceptive statements that merely emanated from New York; it is the place where the consumer viewed and acted on them that matters . . . . Consequently, plaintiffs cannot state a claim under the GBL for purchases made outside of New York.").

Thus, even if Roomsters' conduct was deceptive, and that "deceptive conduct was organized and perpetrated" in New York, such allegations do "not support a finding of statutory standing" absent allegations that consumers were defrauded within the State of New York. *Fishon v. Peloton Interactive, Inc.*, No. 19-cv-11711, 2021 U.S. Dist. LEXIS 129318, at *13-14 (S.D.N.Y. July 12, 2021); *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 203 n.19 (S.D.N.Y. 2009) ("It is not sufficient that a marketing plan originates in New York if the consumer deception occurs elsewhere. The statement . . . was sent to a potential customer in New Jersey and is thus outside the bailiwick of the New York statute." (citation omitted)). Because the Complaint is devoid of *any* allegations indicating where consumers were allegedly deceived or where the related transactions occurred, the NY AG's claims asserted pursuant to NY GBL §§ 349, 350 and NY Executive Law § 63(12) should be dismissed.

## III. THE ROOMSTER DEFENDANTS ARE IMMUNE FROM LIABILITY PURSUANT TO SECTION 230 OF THE COMMUNICATION DECENCY ACT.

Plaintiffs seek to circumvent the immunity provided by the CDA and hold the Roomster Defendants liable for listings and reviews provided by Roomster's users. *See* Compl. ¶¶ 47-94. But like other on-line publishers of user-supplied content (*e.g.*, Facebook, YouTube), Roomster is *not* legally required to verify the accuracy of the user-supplied content and is not liable for any inaccuracies in such user-supplied content. Recognizing as much, the CDA "shields conduct if the defendant [A] is a provider or user of an interactive computer service, [B] the claim is based on

information provided by another information content provider and [C] the claim would treat the defendant as the publisher or speaker of that information." *Herrick v. Grindr LLC*, 765 F. App'x 586, 589 (2d Cir. 2019) ("*Grindr II*") (citation omitted). Circuit courts across the nation are in "general agreement that the text of Section 230(c)(1) should be construed broadly in favor of immunity." *Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019). Dismissal is appropriate where, as here, "the [CDA's] barrier to suit is evident from the face of the complaint." *Grindr II*, 765 F. App'x at 591 (citation omitted) (affirming grant of motion to dismiss claims pursuant to CDA).

To start, Roomster is a "provider . . . of an interactive computer service." *See id.* at 589 (citation omitted). An "interactive computer service" is broadly defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." CDA § 230(f)(2). "[N]umerous courts have held that . . . website hosting services," such as Roomster, "fall within the [the statute's] definition." *Mosha v. Facebook Inc.*, No. 20-cv-2608, 2021 U.S. Dist. LEXIS 12306, at *6-7 (S.D.N.Y. Jan. 22, 2021) (collecting cases); *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 588 (S.D.N.Y. 2018) ("*Grindr I*") ("Courts applying this definition have had no trouble concluding that social networking sites like Facebook.com, and on-line matching services like Roommates.com and Matchmaker.com are 'interactive computer services.'"). Here, the Complaint admits that Roomster falls within this definition, explicitly identifying Roomster to be a "platform, available through their website and corresponding mobile application, allows users to post and search listings for living arrangements, including rental properties, room rentals, sublets, and roommate requests." Compl. ¶ 21.

In addition, the allegedly fake listings and reviews were "provided by another information content provider." *See Grindr II*, 765 F. App'x at 589 (citation omitted). As the provider of an

interactive computer service that generates none of the listings on its platform and none of the content included in its App store reviews, Roomster cannot be held liable for content provided by any other "person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other active interactive computer." CDA § 230(f)(3); *Grindr I*, 306 F. Supp. 3d at 589 ("An ICS is not the creator of offensive content unless it contributes to the 'development of what [makes] the content unlawful.'" (citation omitted)). Indeed, with respect to the reviews, the Roomster Defendants at all times believed that Martinez was encouraging *authentic* users to download Roomster's App and submit *authentic* reviews after using the platform's service. Accordingly, the Roomster Defendants *never controlled* the content of the reviews Martinez procured on Roomster's behalf.

Here, the Complaint relies wholly on a single listing posted by the FTC and reviews in the App stores that are created by third-party users. *See* Compl. ¶ 21; 25-26, 31 (admitting that Martinez, not Roomster, "push[ed] out [allegedly] fake reviews"); 42-43 (misleadingly suggesting that the Roomster Defendants are responsible for posting, or "bait[ing]", "fake" listings). Plaintiffs craft their pleading to purposefully blur the line between user or Martinez-supplied content and Roomster-created content, but a careful reading of conduct for which Plaintiffs seek to hold the Roomster Defendants liable shows that it is, in fact, user-supplied conduct that forms the bases of their claims. At all times, the Roomster Defendants had *no reason to believe* the reviews Martinez procured on Roomsters' behalf were fake. Indeed, to this day, not even Martinez has claimed they were fake. *See* ECF No. 31. Accordingly, the authenticity of these reviews, which were wholly created by third-parties, remains a question of fact.

Finally, Plaintiffs seek to hold Roomster liable "as the publisher or speaker" of some allegedly fake listings and purchasing what it believed to be authentic reviews for App stores. *See*

Compl. ¶¶ 47-93; *Grindr I*, 306 F. Supp. at 588 (citation omitted). "Courts have interpreted 'publication' capaciously to reach claims" artfully plead to avoid the CDA. *Grindr I*, 306 F. Supp. at 590-91 (citation omitted). To determine whether Plaintiffs seek to hold the Roomster Defendants liable as "publisher[s]," the Court should consider whether "there would be no harm . . . but for the content of the postings." *Id*. (citation omitted).

Here, the Complaint boils down to allegations that Roomster "fail[ed] to edit, monitor, or remove the offensive content provided by [a third party]." *See id.* at 591. As already explained, Roomster did verify users and listings to the extent possible and, either way, Roomster is free to use. Accordingly, the only "harm" Plaintiffs can feasibly seek to recover stems from the contents of listings and reviews furnished by third parties. Plaintiffs' theory is "just another way of asserting that [Roomster] is liable because it fails to police and remove" certain listings that slip through the cracks and wholly "depend on a connection between the safety features [the platform was] allegedly . . . missing." *See id.* at 590. But Plaintiffs should not be permitted to circumvent Section 230 immunity just because Roomster's verification protocols were imperfect or not up to Plaintiffs' after-the-fact standards.

In short, the Roomster Defendants are immune from liability under the CDA and Plaintiffs' claims that stem from user-supplied content on the Roomster platform and in App Stores should be dismissed. *Grindr II*, 765 F. App'x at 591.

## **CONCLUSION**

For all the above reasons, the Court should grant this Motion and dismiss Plaintiffs' Complaint with prejudice.

Dated: New York, New York
October 31, 2022

GREENBERG TRAURIG, LLP

*/s/ Jennifer A. Surprenant*

Jennifer A. Surprenant
Sarah E. Atlas
One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 801-9200
Fax: (212) 801-6400
SurprenantJ@gtlaw.com
atlass@gtlaw.com

Andrew G. Berg
2101 L Street, N.W.
Suite 1000
Washington, DC  20037
Tel: (202) 331-3181
berga@gtlaw.com

Gary E. Snyder
Terminus 200
3333 Piedmont Road NE
Suite 2500
Atlanta, GA  30305
Tel: (678) 553-2121
snyderg@gtlaw.com

*Counsel for Defendants*