UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> PEOPLE OF THE STATE OF CALIFORNIA, <br><br> STATE OF COLORADO, <br><br> STATE OF FLORIDA, <br><br> PEOPLE OF THE STATE OF ILLINOIS, <br><br> COMMONWEALTH OF MASSACHUSETTS, <br><br> and <br><br> PEOPLE OF THE STATE OF STATE OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> ROOMSTER CORP., a corporation, <br><br> JOHN SHRIBER, individually and as an officer of Roomster Corp., <br><br> ROMAN ZAKS, individually and as an officer of Roomster Corp., and <br><br> JONATHAN MARTINEZ, individually and doing business as AppWinn, <br><br> Defendants. | Case No: 1:22-cv-7389 (CM) (SN) <br><br> **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION DISMISS** <br><br> **ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

| | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 3 |
| I. THERE IS NO LIVE CASE OR CONTROVERSY BEFORE THE COURT | 3 |
| II. THE FTC HAS NOT SATISFIED SECTION 13(B)'S REQUIREMENTS | 4 |
| III. THE FTC DOES NOT HAVE THE AUTHORITY TO INITIATE THIS LAWSUIT | 5 |
| IV. SUBJECTIVE REVIEWS ARE NOT FALSE ENDORSEMENTS | 8 |
| V. THE NY AG'S PLEADING OF ITS CLAIMS IS FATALLY FLAWED | 9 |
| VI. SECTION 230 OF THE CDA IS APPLICABLE | 10 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) ...........................................................................................9

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
   140 S. Ct. 2335 (2020) ......................................................................................................7

*Casper Sleep, Inc. v. Nectar Brand LLC*,
   No. 18 Civ. 4459, 2020 WL 5659581 (S.D.N.Y. Sept. 23, 2020) .................................8, 9

*Charles v. Orange Cnty.*,
   925 F.3d 73 (2d Cir. 2019) ................................................................................................4

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) ..........................................................................................................7

*FTC v. Educare Ctr. Servs., Inc.*,
   433 F. Supp. 3d 1008 (W.D. Tex. 2020) ...........................................................................5

*FTC v. LeadClick Media, LLC*,
   838 F.3d 158 (2d Cir. 2016) ............................................................................................10

*FTC v. Vyera Pharm., LLC*,
   479 F. Supp. 3d 31 (S.D.N.Y. 2020) .............................................................................4, 5

*FTC v. Vyera Pharm., LLC*,
   No. 20CV00706, 2021 WL 4392481 (S.D.N.Y. Sept. 24, 2021) ....................................10

*Herrick v. Grindr, LLC*,
   306 F. Supp. 3d 579 (S.D.N.Y. 2018) .............................................................................10

*In re Myovant Scis. Ltd. Sec. 16(b) Litig.*,
   513 F. Supp. 3d 365 (S.D.N.Y. 2021) ...............................................................................3

*Interlink Prod. Int'l, Inc. v. F & W Trading LLC*,
   No. CV151340MASDEA, 2016 WL 1260713 (D.N.J. Mar. 31, 2016) ............................9

*Lynch v. City of N.Y.*,
   952 F.3d 67 (2d Cir. 2020) ................................................................................................4

*Mayfield v. GE Capital Corp.*,
   No. 97 Civ. 2786, 1999 WL 182586 (S.D.N.Y. Mar. 31, 1999) .......................................9

*People by Vacco v. Lipsitz*,
   663 N.Y.S.2d 468 (Sup. Ct. N.Y. Cnty. 1997) ...............................................................10

*People v. Direct Revenue, LLC*,
   862 N.Y.S.2d 816 (Sup. Ct. N.Y. Cnty. 2008) .................................................................9

*SEC v. Commonwealth Chem. Sec., Inc.*,
    574 F.2d 90 (2d Cir. 1978)..........................................................................................5

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    140 S. Ct. 2183 (2020)..................................................................................1, 5, 6, 7, 8

*Shetiwy v. Midland Credit Mgmt.*,
    15 F. Supp. 3d 437 (S.D.N.Y. 2014)..........................................................................8

**Statutes**

15 U.S.C. § 45(m) ..............................................................................................................5

15 U.S.C. § 53(b) ............................................................................................................4, 5

15 U.S.C. § 57 ....................................................................................................................7

15 U.S.C. § 57b ..................................................................................................................5

FTC Act § 5 (a) ..................................................................................................................4

Pub. L. No. 73-291, § 210, 48 Stat. 881, 908-09 (1934) ...................................................6

**Other Authorities**

16 CFR 4.10(d) ..................................................................................................................2

16 CFR 4.11(c)...................................................................................................................2

David Di Franco, *App Winn: Download Apps and Win Prizes*, YouTube
(July 19, 2013),
    https://web.archive.org/web/20140302012044/http://www.youtube.com/watch
    ?v=Wsd1u4jEGA4 (as it existed on March 2, 2014) ................................................8

**INTRODUCTION**

Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp.") (ECF No. 56) is unresponsive to the critical flaws identified in Defendants' Motion.[1] For at least six reasons, the Complaint should be dismissed:

*First*, contrary to the FTC's assertion, Defendants are prepared to stipulate to the *entirety* of the relief the FTC may obtain. Nonetheless, the FTC disingenuously claims that discovery is required to craft appropriate relief. This is nonsense, and the Court should reject the FTC's improper efforts to prolong this dispute.

*Second*, the face of the Complaint reveals that the alleged conduct about which the FTC complains has either been remediated or is not actionable conduct in the first place. Nonetheless, and as discussed, Defendants are willing to stipulate to enjoin any future, similar acts. Accordingly, there is simply no basis to ignore the ongoing-or-imminent requirement of Section 13(b) of the FTC Act.

*Third*, far from attacking the FTC's independence, Defendants *agree* that the agency's removal protections are valid under *Humphrey's Executor*. However, the FTC must adhere to the *limitation* in *Humphrey's Executor* that was emphasized by *Seila Law LLC v. Consumer Fin. Prot. Bureau* —a multi-member, independent agency may "not wield substantial executive power." 140 S. Ct. 2183, 2199-2200 (2020). Because the power to sue for permanent injunctive relief is "a quintessentially executive power," (*id.* at 2200) Congress exceeded its authority in granting the FTC the litigation powers invoked here.

---

[1] For ease of reference, the same meanings for defined capitalized terms in Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Mot.") apply below as well, except the Roomster Defendants will herein be defined collectively as "Defendants."

1

*Fourth*, State Plaintiffs fail to rebut legal precedent holding that subjective reviews are not "deceptive" acts under their respective statutes. Instead, State Plaintiffs rely on the red herring that underpins Plaintiffs' entire False Endorsements claim—a few emails showing Defendants controlling the *number*, *location* and *timing* of reviews procured by Martinez somehow leads to the inference that Defendants knew the *substance* of those reviews was fake.[2] But simply repeating the allegation that the reviews were "fake", without pleading *factual* allegations that plausibly lead to this inference (and that the Defendants *knew* the reviews were fake) is insufficient to state a claim. *See* Compl. ¶¶ 23-24, 32-38; *see also* Mot. 7 (citing ECF No. 31 at "Findings," ¶ 3, where it plainly states that Martinez "neither admit[ted] nor denie[d]" the allegations in the Complaint).

*Fifth*, the NY AG fails to tie *any* transaction or deception to the State of New York—a fatal pleading defect that requires dismissal of its claims.

*Finally*, Plaintiffs attempt to avoid Section 230 immunity by claiming that they seek to hold Defendants liable "for their own misrepresentations." *See* Opp. 24. But Plaintiffs admit that the only representations actually made by Defendants no longer exist. *See* Mot. 2-3; *see also* Opp. 4. The remainder of Plaintiffs' allegations stem from allegedly "fake listings" and "fake reviews" created by third parties without *any* assistance from Defendants. Accordingly, even assuming these reviews and listings are fake, they are subject to Section 230 of the CDA and Defendants cannot be held liable.

---

[2] Notably, State Plaintiffs conducted *no* pre-Complaint investigation of Defendants, and the FTC has not obtained Defendants' consent or notified Defendants of its intent to share its investigative record with State Plaintiffs, undermining *any* factual basis for the State Plaintiffs' claims. *See* 16 CFR 4.10(d), 16 CFR 4.11(c).

**ARGUMENT**

**I.     THERE IS NO LIVE CASE OR CONTROVERSY BEFORE THE COURT**

As admitted by the FTC, an injunction is the only relief the FTC may seek.[3] Rather than be receptive to Defendants' willingness to stipulate to this relief, the FTC resorts to inflammatory allegations beyond the Complaint to support its admitted attempt to embark on a fishing expedition. *See* Opp. 10-11; *see also* Mot. 6.

Despite engaging in *months* of pre-Complaint discovery (*see* Mot. 2), Plaintiffs *still* premise their entire case on ceased conduct and a handful of emails that do not lead to the plausible inference that the reviews supplied by Martinez were "fake" and that Defendants had knowledge of this fact. *See* Opp. 4; *see also* Compl. ¶¶ 23-24, 32-38. Nonetheless, the FTC asserts that discovery is necessary to determine the "nature and scope of Defendants' conduct." *See* Opp. 11. A lawsuit is not predicated on a hope that a plaintiff will uncover a claim through the course of discovery. *See In re Myovant Scis. Ltd. Sec. 16(b) Litig.*, 513 F. Supp. 3d 365, 373 (S.D.N.Y. 2021) ("unsupported speculation does not amount to a reasonable foundation, the plaintiffs cannot avoid dismissal by claiming that discovery will reveal a basis for their claim"). Furthermore, the assertion that discovery is required because Defendants have not been truthful is false pretext for engaging in coercive litigation tactics and is otherwise outside of the scope of the Complaint and should not be considered. *See* Opp. 10. Accordingly, the Court should reject the FTC's open attempt to conduct a fishing expedition.

---

[3] Although the FTC now claims that only the State Plaintiffs seek monetary relief (*see* Opp. 1 n.2, 11 n.16), the Complaint, which the FTC has not sought to amend, suggests otherwise. *See* Compl. ¶ 1, Prayer for Relief ¶ B; *see also* Mot. 8.

3

## II.   THE FTC HAS NOT SATISFIED SECTION 13(B)'S REQUIREMENTS

The FTC's burden is not to simply plead "some facts" (*see* Opp. 3) or create a "factual dispute" as to whether its met Section 13(b)'s requirements. *See id*. at 5. Rather, it must plead facts "that allow[] the court to draw the reasonable inference" (*Charles v. Orange Cnty.*, 925 F.3d 73, 81 (2d Cir. 2019) (citation omitted)) that Defendants are "violating, or [are] about to violate" Section 5 (a) of the FTC Act. 15 U.S.C. § 53(b). "[A]llegations that are conclusory are not entitled to be assumed true." *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020) (citation omitted).

Here, there are simply no plausible, nonconclusory allegations that Defendants are *currently* "violating," or are "about to violate" the FTC Act.[4] Public information subject to judicial notice confirms that all the allegedly false representations created by Defendants were removed from Roomster's platforms. *See* Mot. 2-3; *see also* Opp. 4. Accordingly, these allegations do not demonstrate that Defendants' conduct is causing ongoing "harm" as the FTC suggests. *See* Opp. 4 n.7; *see also infra* § IV. Thus, the FTC's reliance on *FTC v. Vyera Pharm., LLC* (which involved ongoing conduct) is misplaced. 479 F. Supp. 3d 31, 45 (S.D.N.Y. 2020). As discussed *infra* § VI, the remainder of the FTC's allegations concern content that was not created by Defendants, and thus Defendants are immunized pursuant to Section 230 of the CDA.

The FTC also cites no case from this Circuit that supports the proposition Defendants' removal of representations from its platform after receiving notice of the FTC's investigation is indicative of ongoing-or-imminent violations of the FTC Act. *See* Opp. 5. Defendants' willingness to *voluntarily* stipulate to the injunctive relief the FTC seeks herein, even though they continue to

---

[4] The FTC inaccurately paraphrases an inapplicable Tolling Agreement signed by Roomster (not Shriber or Zaks) and the FTC (not the State Plaintiffs) during the investigation phase of this dispute. *See* Opp. 6 n.8. The plain language of the Agreement makes it clear that the Tolling Period ended when the FTC filed the Complaint. Roomster *expressly* did not waive this argument with respect to conduct falling outside of the Tolling Period, which includes the time between the filing of the Complaint and the filing of Defendants' Motion.

4

believe that the Complaint is deficient and should be dismissed, belies any assertion that there are likely to be reoccurring violations.

Similarly, the FTC's contention that a continuation of company management *alone* establishes a likelihood of reoccurring violations (*see* Opp. 6) is unfounded. None of its cited authorities suggest otherwise. *See, e.g.*, *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 100 (2d Cir. 1978) (reoccurring violations likely where, in conjunction with defendants remaining in their positions, *defendants had also previously been found liable for their repeated violation of the same securities laws*); *FTC v. Educare Ctr. Servs., Inc.*, 433 F. Supp. 3d 1008, 1016 (W.D. Tex. 2020) (recurring violations likely where, in conjunction with defendants remaining in their positions, *defendants also maintained ongoing business relationships within the network of co-defendants*); *Vyera Pharm*, 479 F. Supp. 3d at 44-45 (recurring violations likely where, in addition to defendants still holding leadership positions, *"competition-blocking system . . . remain[ed] in place. . . . as of the date that the FTC filed this lawsuit"*) (emphases added). Even so, there are simply no nonconclusory allegations that Roomster's principals have engaged in the repeated, knowing, and flagrant conduct that would make their mere presence at Roomster sufficient to find that Defendants are likely to imminently engage in future violations.

### III. THE FTC DOES NOT HAVE THE AUTHORITY TO INITIATE THIS LAWSUIT

The FTC claims that *Humphrey's Executor* forecloses the Defendants' constitutional objection to this suit. *See* Opp. 8. But each of the FTC's arguments is contrary to *Seila Law*, which emphasized a critical limit in *Humphrey's Executor* that invalidates the FTC's authority to seek permanent injunctive relief in federal court pursuant to 15 U.S.C. §§ 45(m), 57b, and 53(b).

*First*, and contrary to the FTC's contentions (*see* Opp. 8), Defendants are not challenging *Humphrey's Executor* or the validity of the FTC's removal protections under it. Instead,

5

Defendants contend that the FTC cannot constitutionally exercise the power to file suit for permanent injunctive relief—a "quintessentially" executive power that Congress granted the agency in the 1970s. *See* Mot. 11-12. Defendants simply ask this Court to reaffirm the critical limitation in *Humphrey's Executor* that was emphasized by *Seila Law:* A multi-member independent agency may "not wield substantial executive power." 140 S. Ct. at 2199-2200.

*Second*, the FTC asserts that it "has always had the authority to enforce the FTC Act, including in federal court . . . ." Opp. 9. The FTC again disregards *Seila Law*, which described *Humphrey's Executor* and the 1935 FTC quite differently: "Rightly or wrongly, the [*Humphrey's Executor*] Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power,'" but rather at most "quasi-legislative or quasi-judicial powers." 140 S. Ct. at 2198 (citation omitted); *see id.* at 2200. Although the FTC here points to its original authority to conduct adjudications and petition appellate courts to enforce the resulting orders (*see* Opp. 9), the agency does not and cannot dispute Defendants' showing that *those other powers* were upheld as "quasi-judicial" and therefore cannot justify the purely executive power at issue to file suit for injunctive relief *independent of any agency adjudication. See* Mot. 11-12. While the FTC further observes that it was given the power in 1933 to enforce the securities laws in federal court (*see id*. at 9 n.13), the agency neglects to mention that this power was transferred to the SEC *in 1934*, just a year later and prior to *Humphrey's Executor*. *See* Pub. L. No. 73-291, § 210, 48 Stat. 881, 908-09 (1934). As *Seila Law* admonished in more language disregarded by the FTC, "what matters is the set of powers the [*Humphrey's Executor*] Court considered as the basis for its decision, not any latent powers that the agency may have had not alluded to by the Court." 140 S. Ct. at 2200 n.4.

*Third*, the FTC claims that *Seila Law* suggested that the CFPB "could be rendered constitutional by becoming a multimember commission (like the FTC)." Opp. 9-10. But what the

6

Court actually said was that "there *may be* means of remedying the defect in the CFPB's structure that the Court lacks the authority to provide," and that judicial severance of the CFPB's removal protections "d[id] *not foreclose Congress from pursuing alternative responses* to the problem—for example, converting the CFPB into a multimember agency." *Seila Law,* 140 S. Ct. at 2211 (emphasis added). That hedged disclaimer did not pre-approve any particular alternative, let alone one merely changing the CFPB's single-headed structure *without also eliminating its purely executive powers*. This dicta in *Seila Law*'s severability analysis should not be read to contradict the essential reasoning in the decision's constitutional analysis.

*Finally*, the FTC argues that "even an unconstitutional removal restriction" would "not invalidate this enforcement action." Opp. 10. This fallback erroneously assumes that the removal restriction enacted in 1914 and upheld by the Supreme Court in 1935 later became unconstitutional, rather than that the statutory grant of executive litigation powers to the independent FTC in the 1970s has always been unconstitutional and unenforceable. The FTC makes no effort to reconcile its assumption with (1) the precedent holding that "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted[] and for that reason has no effect on the original statute," (*Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2353 (2020) (plurality op.) (citation omitted)); (2) the express severability provision that Congress included (15 U.S.C. § 57); (3) the general severability principle that courts must "try to limit the solution to the problem," (*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010) (citation omitted)); or (4) the agency's own recognition that "only the Supreme Court can overrule" *Humphrey's Executor*. Opp. 8. Rather than trying to "re-write" the "work" of Congress and the Supreme Court, this Court should apply "the negative power to disregard [the] unconstitutional

7

enactment" granting executive litigation powers to the independent FTC. *Seila Law*, 140 S. Ct. at 2211.

### IV. SUBJECTIVE REVIEWS ARE NOT FALSE ENDORSEMENTS

The State Plaintiffs, do not (because they cannot) distinguish legal precedent from their respective jurisdictions holding that subjective representations, such as reviews, are "not actionable misrepresentations because they are mere opinion." *Casper Sleep, Inc. v. Nectar Brand LLC*, No. 18 Civ. 4459, 2020 WL 5659581, at *16, 25 (S.D.N.Y. Sept. 23, 2020); *see also* Mot. 16-17. Instead, State Plaintiffs rely on the red herring that underpins Plaintiffs' entire False Endorsement theory of liability—that a few emails showing Defendants controlling the *number*, *location* and *timing* of reviews procured by Martinez leads to the plausible inference that Defendants knew that the *substance* of those reviews was fake. *See* Opp. 13-15. This is a logical leap that is refuted by AppWinn's marketing, which Defendants relied on when retaining Martinez. *See* Mot. 6-7 (including 7 n.4); *see also* David Di Franco, *App Winn: Download Apps and Win Prizes*, YouTube (July 19, 2013), https://web.archive.org/web/20140302012044/http://www.youtube.com/watch?v=Wsd1u4jEGA4 (as it existed on March 2, 2014). Simply repeating the assertion that reviews were fake, without pleading *factual* allegations that plausibly lead to this inference (or the inference that Defendants knew reviews were fake), is the definition of a conclusory allegation that fails to state a claim. *See Shetiwy v. Midland Credit Mgmt.*, 15 F. Supp. 3d 437, 444 (S.D.N.Y. 2014) (granting defendants' motion to dismiss because "plaintiffs conclusory allegations fail to make any concrete factual assertions").

The State Plaintiffs also falsely contend that they have pleaded allegations of "real injury" suffered by consumers "as a result" of these reviews. *See* Opp. 15. In fact, the Complaint fails to plead even *a single allegation of actual harm to any identified consumer*, which is not surprising

8

because *Roomster is free*. *See* Mot. 3-4. Plaintiffs cannot reconcile their theory of restitution based on consumer "injury" with this fact, so the Opposition simply ignores it. But this is fatal to State Plaintiffs' False Endorsement Claims, and the nonbinding caselaw relied on by State Plaintiffs does not change this result. In *Ariix, LLC v. NutriSearch Corp.*, from the 9th Circuit, the complaint included allegations of defendant explicitly agreeing to rig *the substance* of reviews for compensation. *See* 985 F.3d 1107,1117-1118 (9th Cir. 2021). Furthermore, *Interlink Prod. Int'l, Inc. v. F & W Trading LLC*, No. CV151340MASDEA, 2016 WL 1260713 (D.N.J. Mar. 31, 2016) from the District Court of New Jersey, should not change the view of this Court: "favorable reviews are not actionable misrepresentations because they are mere opinion." *See, e.g.*, *Casper Sleep, Inc.,* 2020 WL 5659581, at *24-25.

## V. THE NY AG'S PLEADING OF ITS CLAIMS IS FATALLY FLAWED

*Nowhere* does the NY AG plead the location of the alleged deceptions at issue. This is fatal to its claims: "[W]here the deception is alleged to have affected consumers nationwide, it is not enough to allege merely that the defendant's principal place of business is in New York, or that defendant originated the overall scheme in the state." *People v. Direct Revenue, LLC*, 862 N.Y.S.2d 816, 816 (Sup. Ct. N.Y. Cnty. 2008) (citation omitted) (GBL §§ 349 and 350 *and* Executive Law §63(12) claims dismissed as "jurisdictionally defective" when the NY AG failed to allege "that respondent completed . . . any wrongful act" in New York and failed to "identify any New York residents affected by respondents' conduct"). Here, like in *Direct Revenue*, the NY AG does not allege any conduct that occurred in New York or that any New York residents who were affected by same. "[A] bare allegation that the deceptive sales may have taken place nationwide does not sufficiently allege deceptive conduct in New York, even under the liberal notice pleading requirements of the federal courts." *Mayfield v. GE Capital Corp.*, No. 97 Civ. 2786, 1999 WL 182586, at *32 (S.D.N.Y. Mar. 31, 1999) (citation omitted).

Furthermore, the NY AG's reliance on *Lipsitz* and *Vyera* is misplaced. In *People by Vacco v. Lipsitz*, the Court first found that the acts at issue occurred in New York, so there was nothing barring the NY AG from recovering on behalf of out-of-state residents. *See* 663 N.Y.S.2d 468, 579-580 (Sup. Ct. N.Y. Cnty. 1997). The same occurred in *FTC v. Vyera Pharm., LLC,* No. 20CV00706, 2021 WL 4392481, at *4 (S.D.N.Y. Sept. 24, 2021). Here, Defendants do not argue that the NY AG cannot recover on behalf of out-of-state residents who were deceived (or engaged in transactions) in New York. Instead, Defendants assert that the Complaint is devoid of *any* allegations tying the location(s) of the alleged deception(s) and/or transaction(s) to New York. Thus, the NY AG's claims are jurisdictionally defective and should be dismissed.

## VI.  SECTION 230 OF THE CDA IS APPLICABLE

Plaintiffs claim they seek to hold Defendants liable "for their own misrepresentations." *See* Opp. 24. But Plaintiffs admit the only representations attributed to Defendants no longer exist. *See* Mot. 2-3; *see also* Opp. 4. The remainder of Plaintiffs' allegations of "fake listings" and "fake reviews" stem from third party conduct subject to Section 230 immunity, as the Complaint is devoid of a single allegation supporting a plausible inference that Defendants (or unidentified, so-called "affiliates") were participating in creating, let alone falsifying, the *substance* of reviews or listings. *See* Opp. 24-25; *see also* Compl. ¶¶ 3, 42. Accordingly, Plaintiffs' reliance on *FTC v. LeadClick Media, LLC* is misplaced, as there the defendant was directly involved in the scheme. *See* 838 F.3d 158 (2d Cir. 2016). Plaintiffs plainly seek to circumvent Section 230's applicability and impose liability of the type disallowed in *Herrick v. Grindr*, *LLC* 306 F. Supp. 3d 579 (S.D.N.Y. 2018), and their attempt should be rejected.

## CONCLUSION

For all the above reasons, the Court should grant the Defendants' Motion and dismiss Plaintiffs' Complaint with prejudice.

10

| | |
|---|---|
| Dated: New York, New York<br>December 21, 2022 | GREENBERG TRAURIG, LLP<br><br>*/s/ Jennifer A. Surprenant*<br>Jennifer A. Surprenant<br>Sarah E. Atlas<br>One Vanderbilt Avenue<br>New York, NY 10017<br>Tel: (212) 801-9200<br>Fax: (212) 801-6400<br>SurprenantJ@gtlaw.com<br>atlass@gtlaw.com<br><br>Andrew G. Berg<br>2101 L Street, N.W.<br>Suite 1000<br>Washington, DC  20037<br>Tel: (202) 331-3181<br>berga@gtlaw.com<br><br>Gary E. Snyder<br>Terminus 200<br>3333 Piedmont Road NE<br>Suite 2500<br>Atlanta, GA  30305<br>Tel: (678) 553-2121<br>snyderg@gtlaw.com<br><br>*Counsel for Defendants* |