UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | **Case No. 1:22-cv-7389** |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| STATE OF COLORADO, | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY AND FOR PROTECTIVE ORDER** |
| STATE OF FLORIDA, | |
| PEOPLE OF THE STATE OF ILLINOIS, | |
| COMMONWEALTH OF MASSACHUSETTS, and | |
| PEOPLE OF THE STATE OF STATE OF NEW YORK, | |
|      Plaintiffs, | |
|      v. | |
| ROOMSTER CORP., a corporation, | |
| JOHN SHRIBER, individually and as an officer of Roomster Corp., | |
| ROMAN ZAKS, individually and as an officer of Roomster Corp., and | |
| JONATHAN MARTINEZ, individually and doing business as AppWinn, | |
|      Defendants. | |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND .................................................................................................. 1

III.    ARGUMENT ....................................................................................................... 4

    A.    Defendants Have Failed to Show the Requisite Good Cause for a Stay of Discovery—Discovery Should Proceed in Accordance with the Parties' Agreed-Upon Schedule ............................................................................ 4

        i.    Defendants' motion to dismiss fails to make a "strong showing" that each of Plaintiffs' multiple claims lack merit ........................... 5

        ii.    Defendants have not shown and cannot show undue burden .......................... 9

        iii.    Defendants' derailment of the discovery schedule to which they agreed would unfairly prejudice Plaintiffs ...................................... 11

    B.    Defendants Fail to Establish Good Cause for their Protective Order .................. 12

        i.    Defendants' proposed protective order is overbroad and inconsistent with Plaintiffs' governmental enforcement authority and statutory obligations..... 12

        ii.    If the Court is inclined to enter a protective order, it should enter the protective order proposed by Plaintiffs ........................................... 17

IV.    CONCLUSION.................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Immigration & Customs Enf't Div. of U.S. Dep't of Homeland Sec.*,
   No. 07-cv-8224 (JGK)(FM), 2011 U.S. Dist. LEXIS 174211 (S.D.N.Y. Jan. 11, 2011)........... 4

*Association Fe Y Allegria v. Republic of Ecuador*, No. 98-8650,
   1999 U.S. Dist. LEXIS 4815 (S.D.N.Y. Mar. 16, 1999) ..................................................... 4

*Bd. of Trs., Jacksonville Police & Fire Pension Fund v. Lee*, 189 So.3d 120 (Fla. 2016)........... 14

*Bravia Cap. Partners, Inc. v. Fike*, 296 F.R.D. 136 (S.D.N.Y. 2013)......................................... 10

*Collins v. Yellen*, 141 S. Ct. 1761 (2021) ...................................................................................... 5

*EEOC v. United Parcel Service, Inc.*, 15-cv-4141 (MKB) (CLP),
   2018 U.S. Dist. LEXIS 37646 (E.D.N.Y. Mar. 5, 2018)...................................................... 16

*Fla. Freedom Newspapers, Inc. v. McCrary*, 520 So.2d 32 (Fla. 1988) ..................................... 14

*FTC v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016)......................................................... 8

*FTC v. Sage Seminars*, No. C-95-2854 SBA, 1995 U.S. Dist. LEXIS 21043
   (N.D. Cal. Nov. 2, 1995)........................................................................................................ 5

*Gen. Elec. Int'l, Inc. v. Thorco Shipping Am., Inc.*, No. 21-cv-6154 (JPC),
   2022 U.S. Dist. LEXIS 97093 (S.D.N.Y. May 31, 2022) ...................................................... 6

*Giuffre v. Maxwell*, No. 15-cv-7433 (RWS), 2016 U.S. Dist. LEXIS 6638
   (S.D.N.Y. Jan. 20, 2016).................................................................................................. 4, 9, 12

*Hill v. Prudential Ins. Co. of Am.*, 701 So.2d 1218 (Fla. Dist. Ct. App. 1997) ........................... 14

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) ....................................................... 5

*Kassover v. UBS A.G.*, No. 08-cv-2753 (LMM) (KNF), 2008 U.S. Dist. LEXIS 105213
   (S.D.N.Y. Dec. 19, 2008) ....................................................................................................... 9

*Kirschner v. J.P. Morgan Chase Bank, N.A.*, No. 17-cv-6334 (PGG) (SLC),
   2020 U.S. Dist. LEXIS 8977 (S.D.N.Y. Jan. 15, 2020) ................................................. 4, 9, 11

*Nat'l Collegiate Athletic Ass'n v. Associated Press*, 18 So. 3d 1201 (Fla. 1st DCA 2009),
   *review denied,* 37 So. 3d 848 (Fla. 2010) ............................................................................ 15

*New York v. Grand River Enters. Six Nations, Ltd.*, No. 14-cv-910A(F),
   2020 U.S. Dist. LEXIS 124977 (W.D.N.Y. July 15, 2020).................................................... 16

*O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709 (LTS) (GWG),
2018 U.S. Dist. LEXIS 70418 (S.D.N.Y. Apr. 26, 2018).........................................................9

*Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675 (S.D.N.Y. 2018) ..........................4, 9

*Saks Inc. v. Attachmate Corp.*, No. 14-cv-4902 (CM), 2015 U.S. Dist. LEXIS 52867
(S.D.N.Y. Apr. 17, 2015)...................................................................................................12, 13

*Sepro Corp. v. Fla. Dep't of Envtl. Prot.*, 839 So. 2d 781 (Fla. 1st DCA 2003),
*review denied sub nom., Crist v. Dep't of Envtl. Prot.*, 911 So. 2d 792 (Fla. 2005) ...............14

*Sovereign Health of Fla., Inc. v. City of Fort Myers*, 2:15-cv-265-FTM-29CM, 2016 U.S. Dist.
LEXIS 139591 (M.D. Fla. Oct. 7, 2016) ................................................................................14

*United States v. MyLife.Com, Inc.*, 499 F. Supp. 3d 757 (C.D. Cal. 2020) ...................................5

*Veleron Holding, B.V. v. Stanley*, No. 12-cv-5966 (CM), 2014 U.S. Dist. LEXIS 55246
(S.D.N.Y. Apr. 2, 2014)............................................................................................................13

*Wait v. Fla. Power & Light Co.*, 372 So.2d 420 (Fla. 1979) ........................................................15

**Statutes**

§ 119.021, Fla. Stat. .......................................................................................................................15

§ 119.0715, Fla. Stat. .....................................................................................................................15

§ 257.36(6), Fla. Stat. ....................................................................................................................15

15 U.S.C. § 45(b) .............................................................................................................................6

15 U.S.C. § 57b-2 ...........................................................................................................................17

47 USC § 230 ...................................................................................................................................8

5 ILCS 160/1, *et seq* .......................................................................................................................15

Ch. 119, Fla. Stat. (Florida Public Records Act) .....................................................................14, 15

N.Y. Executive Law § 63(12) ..........................................................................................................8

N.Y. GBL § 349 ...............................................................................................................................7

N.Y. GBL § 350................................................................................................................................7

**Rules**

16 C.F.R. § 4.10 ..............................................................................................................................17

16 C.F.R. § 4.11 ................................................................................................................. 17

16 C.F.R. Part 3 .................................................................................................................. 6

Fed. R. Civ. P. 12(i) ......................................................................................................... 11

## I.  INTRODUCTION

Defendants' motion fails to show the good cause necessary to grant a stay of discovery. First, their pending motion to dismiss fails to make a strong showing that any one—let alone all—of Plaintiffs' claims are unmeritorious, and it would not entirely dispose of this action even if it was granted. Second, Defendants fail to show they would suffer a substantial burden from responding to Plaintiffs' initial discovery requests. Defendants do not provide any evidence of burden and they offer no reason why any burden concerns cannot be addressed through the normal meet-and-confer process. Third, Defendants' attempts to derail the discovery schedule agreed upon by all parties unnecessarily delays this matter and prejudices Plaintiffs' ability to take discovery and obtain a speedy and just resolution of this case. Defendants' sweeping motion for a stay of all discovery should therefore be denied.

The Court should also deny entry of Defendants' requested protective order. Defendants' proposed order is overbroad, subject to abuse, unworkable for all Plaintiffs, and should not be entered. Plaintiffs sent Defendants a draft protective order that contains a narrow definition of confidential information consistent with authority in this district and that appropriately addresses federal and state statutory requirements and enforcement authority applicable to the government entities bringing this case. Defendants refused to comment on that draft, neglected to attach it to their motion, and failed to incorporate many of the necessary provisions into the proposed order that they did submit.

## II.  BACKGROUND

When Plaintiffs agreed to the stipulated Civil Case Management Plan ("CCMP," Doc. 41), they did so in reliance on Defendants' representations that they would not move for a stay while their anticipated motion to dismiss was pending. *See* Declaration of Emily C. Kalanithi,

1

filed herewith, at ¶ 5. Specifically, during the parties' September 28, 2022 CCMP conference

(*see* Doc. 34), the parties discussed the litigation and discovery schedule, and Defendants

indicated they would be filing a motion to dismiss. As part of those discussions, Plaintiffs made

clear that their agreement to the proposed joint discovery schedule was conditioned on the

understanding that discovery would proceed even while a motion to dismiss was pending.

Kalanithi Dec., ¶ 3. Defendants confirmed Plaintiffs' understanding. *Id*. at ¶ 4. Subsequently, all

parties submitted the current CCMP schedule to the Court for approval, which the Court entered

on October 17, 2022. Doc. 41.[1]

Defendants, however, shifted course about a month later when, during the parties'

November 8, 2022 Rule 26(f) conference, they first announced, over Plaintiffs' objections, that

they would seek a discovery stay after all. Defendants filed the instant motion approximately two

months later, seeking a stay of all discovery for an indeterminate amount of time.

In the interim, Plaintiffs served Defendants with their First Request for Production.

Defendants' response was due January 19, 2022, following a one-week extension of time.

Defendants' responses provide only a host of objections, including multiple, boilerplate

objections to each definition, instruction, and request. Defendants also claim throughout their

responses to not know what standard words mean, including "consumer," "complaint,"

"request," "refund," "website," "mobile applications," "Internet," "employees," "job,"

"duration," "termination," "current," "former," and many others, because they are all

"susceptible to varying interpretations." A true and correct copy of Defendants' Objections and

---

[1] Paragraph 12 of the CCMP specifically states that the "scheduling order may be altered or amended only on a showing of good cause that is not reasonably foreseeable at the time the order is entered."

Responses to Plaintiffs' First Set of Requests for Production of Documents is attached to the Declaration of Christian Reigstad, filed herewith, at Exhibit 1.

During the Rule 26(f) conference, Defendants also first suggested that the parties consent to a protective order. Within two days, Plaintiff FTC sent a draft stipulated protective order incorporating the FTC's legal constraints, along with a note that the FTC did not yet have the Plaintiff States' input. Defendants ignored that draft and later sent Plaintiffs an entirely different version, which, as Plaintiffs then notified Defendants, was unworkable—it does not incorporate necessary provisions and includes other provisions Plaintiffs cannot agree to, including an expansive definition of "Confidential Material" that allows Defendants to designate *any* nonpublic information as such. The FTC then sent Defendants a revised draft protective order that incorporates the wide range of disclosure, confidentiality, and retention laws that constrain the six Plaintiff States as well as the FTC. A true and correct copy of that protective order provided to Defendants is attached to the Reigstad Declaration at Exhibit 2. Defendants unilaterally refused to meet and confer regarding Plaintiffs' proposed draft, or any of the state and federal constraints to the entry of a protective order, and instead brought the instant motion.

In addition, an initial Rule 16 conference is currently scheduled for February 2, 2023, but Defendants mislabel that conference as oral argument on their motion to dismiss. Despite Defendants' claim that the Court "schedule[d] arguments on th[eir] Motion to Dismiss" (Doc. 59), the Court has not yet ruled on Defendants' request for oral argument. Doc. 49. And as stated in their letter to the Court, Plaintiffs believe such a hearing is unnecessary. Doc. 49.

## III.  ARGUMENT

Defendants' request for a discovery stay and a protective order should be denied. As detailed below, Defendants have failed to show good cause for a stay of discovery, and their proposed protective order is overly broad and does not comport with Plaintiffs' legal constraints to its entry.

### A.  Defendants Have Failed to Show the Requisite Good Cause for a Stay of Discovery—Discovery Should Proceed in Accordance with the Parties' Agreed-Upon Schedule

Courts in this district have repeatedly recognized that a stay of discovery is not appropriate solely because a motion to dismiss is pending—the moving party must show good cause. *Kirschner v. J.P. Morgan Chase Bank, N.A.*, No. 17-cv-6334 (PGG) (SLC), 2020 U.S. Dist. LEXIS 8977, at *6 (S.D.N.Y. Jan. 15, 2020); *Giuffre v. Maxwell*, No. 15-cv-7433 (RWS), 2016 U.S. Dist. LEXIS 6638, *2-3 (S.D.N.Y. Jan. 20, 2016). In determining whether there is good cause to stay discovery, courts typically consider three factors: (1) whether the motion to dismiss constitutes a "strong showing" that the plaintiffs' claims are unmeritorious;[2] (2) the breadth of the discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay. *Id.* Importantly, with regard to the first prong, Defendants must show that their motion to dismiss will "dispose of the entire action." *Aguilar v. Immigration & Customs Enf't Div. of U.S. Dep't of Homeland Sec.*, No. 07-cv-8224 (JGK)(FM), 2011 U.S. Dist. LEXIS 174211, at *10 (S.D.N.Y. Jan. 11, 2011); *Association Fe Y Allegria v. Republic of Ecuador*, No. 98-8650, 1999 U.S. Dist. LEXIS 4815, *2 (S.D.N.Y. Mar. 16, 1999). Defendants

---

[2] *See also Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 678 (S.D.N.Y. 2018) (denying defendant's request for discovery stay where plaintiff's complaint counts were not "utterly devoid of merit").

fail to meet their burden on each of the three prongs.

  i.  Defendants' motion to dismiss fails to make a "strong showing" that each of Plaintiffs' multiple claims lack merit

Plaintiffs' Complaint alleges that Defendants have violated multiple state and federal consumer protection laws through their fake review scheme and through misrepresentations that listings are verified, authentic, or available. Defendants' 12(b)(6) motion fails to make the requisite "strong showing" that these claims lack merit and, even if granted, would not dispose of this action. It is therefore inadequate to warrant a discovery stay.

  a.  *Defendants' dismissal arguments against the FTC are wholly without merit and would not dispose of the entire action in any event*

As fully briefed in Plaintiffs' response at Doc. 56, each of Defendants' three purported bases for dismissal of the FTC's claims fails on the merits. Doc. 56, §§ III.A-C. First, the FTC has more than sufficiently pled that it has reason to believe Defendants are violating or are about to violate the law. Most importantly, the Complaint alleges ongoing conduct. *See, e.g.*, Doc. 4, ¶¶ 3-4, 25-28, 41-42; Doc. 56, § III.A.1.[3]

Second, Defendants' argument that the FTC lacks the constitutional authority to initiate this lawsuit is foreclosed by binding Supreme Court precedent. Doc. 56, § III.B; *Humphrey's Executor v. United States*, 295 U.S. 602, 632 (1935). And even a successful challenge to that authority would not invalidate this action or justify dismissal of the FTC's claims. Doc. 56, § III.B; *Collins v. Yellen*, 141 S. Ct. 1761, 1787-88 (2021).

---

[3] In addition, to the extent Defendants have ceased any unlawful conduct, cessation occurred only after knowledge of government investigation and is therefore treated as ongoing or imminently about to recur. Doc. 56, § III.A.2; *see, e.g.*, *United States v. MyLife.Com, Inc.*, 499 F. Supp. 3d 757, 767 (C.D. Cal. 2020); *FTC v. Sage Seminars*, No. C-95-2854 SBA, 1995 U.S. Dist. LEXIS 21043, at *16-*17 (N.D. Cal. Nov. 2, 1995).

Third, there is clearly a "case or controversy." Doc. 56, § III.C. The Complaint alleges that Defendants are violating the FTC Act, but Defendants dispute liability. And, under binding Supreme Court case law, Defendants cannot moot the controversy by making an unaccepted settlement offer. *Id*. Therefore, as set forth in more detail in Plaintiffs' response (Doc. 56), each of Defendants' arguments for FTC dismissal fails, which falls far short of the "strong showing" necessary to support a stay.

Moreover, Defendants' requested dismissal of the FTC's claims would fail to "dispose of the entire action" because the arguments apply only to the FTC and its statutory authority and not to the six Plaintiff States who bring suit under their own state statutes. Because the Plaintiff States' claims and the FTC's claims are based on the same conduct, the Plaintiff States will seek and be entitled to the same discovery regardless of whether the FTC's claims are dismissed. In addition, even if dismissed, the FTC may refile the same claims in an FTC administrative proceeding, which would involve the same discovery. *See* 15 U.S.C. § 45(b); 16 C.F.R. Part 3. Discovery will therefore proceed regardless of how the motion to dismiss is resolved, and any stay would needlessly delay a resolution of Plaintiffs' claims. Because Defendants' arguments, even if successful, would not alter the need for discovery, they cannot constitute the "strong showing" necessary to support a stay. *See Gen. Elec. Int'l, Inc. v. Thorco Shipping Am., Inc.*, No. 21-cv-6154 (JPC), 2022 U.S. Dist. LEXIS 97093, at *9-10 (S.D.N.Y. May 31, 2022) (denying motion for discovery stay and finding that even if plaintiffs' claims were ultimately dismissed it was "unlikely that [defendants] will be significantly burdened, if at all, by having to respond to Plaintiffs' requests for discovery in this litigation" because plaintiffs could subsequently arbitrate their claims and take "substantively the same discovery").

> b. *Defendants' dismissal arguments as to the Plaintiff States' multiple deception claims likewise fail and would not dispose of the entire action in any event.*

Also for the reasons fully briefed at Doc. 56, Defendants fail to make a "strong showing" that any of the Plaintiffs States' claims are likely to be dismissed, much less that all of them are. First, the Plaintiff States have sufficiently pled that Defendants' fake-review misconduct has the capacity to deceive or is likely to deceive consumers. Doc. 56, § III.E. Second, Defendants' motion to dismiss challenged only one of two distinct illegal schemes alleged in the Complaint, ignoring the Plaintiff States' separate allegations that Defendants falsely and deceptively advertised rental listings as "verified," "authentic," and available. *Id.* Therefore, even if Defendants' unmeritorious motion to dismiss were granted, a significant portion of the Plaintiffs' action would remain intact and discovery would still be necessary.

Additionally, Defendants' argument that New York's request for nationwide relief would violate the dormant Commerce Clause (i) is premature on a motion to dismiss, (ii) has no basis in Supreme Court or Second Circuit precedent, and (iii) cannot be squared with the allegations in the Complaint, which seek to remedy wrongful conduct that occurred in New York. Doc. 56, § III.F. Indeed, this argument is so weak that Defendants fail to defend it in their motion to dismiss reply (Doc. 57) and do not even mention it in their motion to stay (Doc. 59). And in any event, that argument comes nowhere close to disposing of the entire action, as it applies to just one aspect (nationwide relief) of one remedy (restitution) for one state's (New York's) claims.

Third, Defendants' argument that New York has failed to plead a sufficient in-state nexus for N.Y. GBL §§ 349 and 350 claims is similarly meritless and would fail to dispose of the entire action. To plead deceptive acts or false advertising conduct occurred "in this state" under N.Y. GBL §§ 349 and 350, New York must only plausibly allege that "at least some part" of the

7

deception occurred in New York. *See* Doc. 56, § III.G. The Complaint easily clears that threshold, particularly given the source of the misconduct is alleged to be New York, where all Defendants reside and transact business. *Id.* In any case, Defendants' in-state nexus argument has no application to New York's distinct claim for repeated and persistent fraudulent conduct in violation of N.Y. Executive Law § 63(12), *see* Doc. 56 at 20-21, nor does it apply to any other Plaintiff's claims. Thus, dismissal would not dispose of the entire action and discovery would still be necessary on all remaining claims. Defendants' requested stay would only needlessly cause delay.

### c.  *Section 230 of the Communications Decency Act does not apply*

Defendants' arguments under Section 230 of the Communications Decency Act ("CDA"), 47 USC § 230, are also incorrect and inapplicable here. Doc. 56, § III. The CDA only applies to third-party content on a defendant's platform—it does not immunize platforms from liability for their own content. *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 174, 176 (2d Cir. 2016). Plaintiffs seek to hold Defendants liable for their own misrepresentations. Doc. 56, § III.H. As alleged in the Complaint, Defendants represent that listings are real, available, and verified when they are not. Defendants are also responsible for their fake reviews, which involve content developed by and at the direction of Defendants and placed on other, third-party platforms. The CDA is therefore inapplicable to Plaintiffs' claims, making Defendants' dismissal argument dubious at best. Indeed, Defendants include this argument as an afterthought at the end of their opening brief and offer no substantive defense of the argument in their reply, instead simply offering their disagreement with the Complaint's allegations that Defendants are responsible for the misrepresentations at issue. *See* Doc. 44, § III; Doc. 57, § IV. Again, Defendants fail to meet the requisite "strong showing" to warrant a stay.

    ii.  <u>Defendants have not shown and cannot show undue burden</u>

Defendants' generalized claims of burden are woefully inadequate to justify a stay of all discovery. Defendants do not explain with a "particular and specific demonstration of fact" how the discovery sought by Plaintiffs constitutes a burden. *Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018); *see also Kirschner*, 2020 U.S. Dist. LEXIS 8977, at *8-9 (denying discovery stay where defendants failed to explain how or why discovery requests were "overbroad, irrelevant to [p]laintiff's claims, or unduly burdensome"). Instead, Defendants generally argue, without any evidence, that complying with their discovery obligations would create a "heavy discovery burden." Doc. 59. This is not enough to warrant a stay. *See Giuffre*, 2016 U.S. Dist. LEXIS 6638, at *4 (argument "that discovery in this matter is of wide-breadth, and therefore necessarily burdensome" insufficient to support a stay); *Republic of Turkey*, 316 F. Supp. 3d at 677; *Kirschner*, 2020 U.S. Dist. LEXIS 8977, at *8-9.[4]

Plaintiffs have served one set of discovery requests: their First Request for Production. Defendants cannot seriously claim that participating in standard party discovery concerning Defendants' own business practices will be so unduly burdensome that it should be stayed. That is particularly true given that Defendants' efforts will likely involve similar efforts already undertaken during the underlying investigation. *See Kassover v. UBS A.G.*, No. 08-cv-2753 (LMM) (KNF), 2008 U.S. Dist. LEXIS 105213, *11 (S.D.N.Y. Dec. 19, 2008) (denying discovery stay where "producing the documents . . . which the defendants gathered and surrendered to government investigators previously . . . would not be burdensome."). Indeed,

---

[4] Unlike the *O'Sullivan* case on which they rely, Defendants submit no declaration or other evidence of burden. *Cf. O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709 (LTS) (GWG), 2018 U.S. Dist. LEXIS 70418, at *29-30 (S.D.N.Y. Apr. 26, 2018) (granting stay based on defendants' declaration regarding volume of discovery, which spanned decades and involved third parties).

Defendants stated that they "will" move to stay discovery in the parties' Rule 26(f) report, before any discovery was even served, suggesting that Defendants' motion is a strategic maneuver divorced from any true concerns over burden. *See* Doc. 53 at 2.

Also telling is Defendants' assertion of multiple, boilerplate objections to every one of Plaintiffs' initial discovery requests, even after an extension of time. Reigstad Decl., Ex. 1. Defendants produced no documents in response, and Defendants' written responses and objections indicate they will produce documents (subject to a host of objections) in response to just *two* of Plaintiffs' requests.[5]  For all other requests, they either refuse outright to produce any documents or state they are "willing to meet and confer" without committing to any production at all (Reigstad Dec., Ex. 1), further delaying discovery and condensing the agreed-upon discovery timeline. These tactics illustrate gamesmanship, not true concerns over burden.

Further undercutting their burden claims, Defendants identify just *two* supposedly burdensome document requests in their motion, which seek information about Roomster's U.S.-based customers, page-views, and downloads. *See* Doc. 59 at 7. Those requests are plainly relevant to, among other things, the computation of statutory penalties for the Plaintiff States' claims, and likely can be gathered by running simple reports using Defendants' records. To the extent Defendants claim that responding to those requests would be unduly burdensome, they could and should have submitted a declaration to that effect, but conspicuously chose not to do so.[6]  Moreover, "[t]here is no reason that any objections to individual requests cannot be dealt

---

[5]  The only two requests that Defendants indicated they might honor are Plaintiffs' requests for documents concerning former co-defendant Jonathan Martinez d/b/a AppWinn and documents identified in Defendants' own initial disclosures. Reigstad Decl., Ex. 1, Resp. to 7, 44.

[6]  Defendants may not remedy that deficiency on reply. *See, e.g.*, *Bravia Cap. Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013) ("it was not proper for Fike to submit, for the first

with through the meet-and-confer process, and, if necessary, a conference with the Court."
*Kirschner*, 2020 U.S. Dist. LEXIS 8977, at *9. Should Defendants have concrete objections to specific requests, they should and will be dealt with in accordance with the federal rules and rules of this Court.

    iii.  <u>Defendants' derailment of the discovery schedule to which they agreed would unfairly prejudice Plaintiffs</u>

All parties agreed to the discovery schedule in the CCMP (Doc. 41), and that agreement was based on Defendants' representations that they would participate in discovery while their anticipated motion to dismiss was pending. Kalanithi Decl., ¶¶ 3-5. Defendants now attempt to evade discovery and delay the agreed-upon schedule.

Although Defendants assert that the motion would be for a "short duration" because "argument is scheduled" on their motion to dismiss, that is incorrect—the Court expressly declined to rule on Defendants' oral argument request. *See* Doc. 45. And even if the Court does hear oral argument at the initial pretrial conference scheduled for February 2, the Court may need time to rule on the proposed motion after it has been fully briefed and argued. Indeed, Rule 12(i) provides that the Court may defer resolving the motion to dismiss until trial. Fed. R. Civ. P. 12(i).Thus, rather than for a "short duration," Defendants effectively seek to stay discovery indefinitely. This would significantly compress the time period for Plaintiffs to take discovery on their claims, which the parties all specifically negotiated in their CCMP based on the understanding that discovery would proceed during the pendency of any dismissal motion. That

---

time in her reply . . . evidence and arguments justifying the reasonableness of the fees sought."); *see also* Individual Practices and Procedures of J. McMahon, V.D. ("the fact section of the brief must include all the facts that you will discuss or rely upon for purposes of the motion under consideration").

compressed discovery schedule prejudices Plaintiffs, particularly given the CCMP's admonitions that (i) the Court "does not routinely grant extensions" and (ii) discovery disputes must be raised well in advance of the discovery cut-off date or else parties "may find themselves precluded from taking discovery because they have run out of time." *See* Doc. 41, ¶ 8.

Plaintiffs and the public at large have a significant interest in the speedy and just resolution of this case, and the unnecessary delay requested by Defendants unfairly prejudices those interests. And even if such prejudice did not exist, a stay would still be unwarranted. *Giuffre*, 2016 U.S. Dist. LEXIS 6638, at *4 ("Good cause not otherwise having been shown, lack of prejudice does not justify a stay."). As such, Defendants' request for a stay of discovery should be denied.

### B.  Defendants Fail to Establish Good Cause for their Protective Order

Defendants also fail to show good cause supporting their request for a protective order, as detailed below. *Saks Inc. v. Attachmate Corp.*, No. 14-cv-4902 (CM), 2015 U.S. Dist. LEXIS 52867, at *39 (S.D.N.Y. Apr. 17, 2015) ("The party seeking protection for its data bears the burden of establishing good cause for the issuance and continuation of a protective order" and "[v]ague and conclusory allegations of potential harm are insufficient to establish good cause").

      i.   <u>Defendants' proposed protective order is overbroad and inconsistent with Plaintiffs' governmental enforcement authority and statutory obligations</u>

         *a.  Defendants' proposed order is ripe for abuse*

Defendants' proposed order, including its overly broad definition of confidential material and noticeable absence of other definitions, constitutes the kind of improper confidentiality order disfavored by this Court. As this Court stated in *Attachmate*, "not everything that a business would rather keep secret qualifies as the sort of information that the Federal Rules allow a

litigant to keep secret." 2015 U.S. Dist. LEXIS 52867, at *39. In addition, this Court's individual practices and procedures explicitly recognize that "consistent experience [indicates] that confidentiality stipulations are abused by parties and that much material that is not truly confidential is designated as such." Individual Practices and Procedures of J. McMahon, VI, p. 17. Yet Defendants' proposed order expressly allows them to designate *any nonpublic information* as confidential because there is no requirement that, in order to meet the definition of "Confidential Material," the public disclosure of such material would cause harm. *Compare* Doc. 60-6, ¶ 1[7] *with* Reigstad Dec., Ex. 2, I.B[8]; *see also Veleron Holding, B.V. v. Stanley*, No. 12-cv-5966 (CM), 2014 U.S. Dist. LEXIS 55246, at *20 (S.D.N.Y. Apr. 2, 2014) ("Because of the strong First Amendment and common law interest in public access to judicial proceedings, 'confidential information' in American litigation has historically been limited to information that, if disclosed, could cause real and imminent damage to the parties' interests"). Specifically, Defendants' definition broadly includes any "material containing information *that has not been published or otherwise made publicly available*." Doc. 60-6, ¶ 1 (emphasis added). This is exactly the kind of order that this Court has indicated has resulted in "a tremendous increase in the number of requests for filing documents under seal" with "virtually anything of substance [being] designated 'highly confidential' by the parties." *Attachmate*, 2015 U.S. Dist. LEXIS

---

[7] Defendants' proposed order broadly defines "Confidential Material" as any discovery information that "contains trade secrets, confidential commercial or financial information, confidential research and development information, sensitive personal information, or other material containing information that has not been published or otherwise made publicly available."

[8] Plaintiffs' proposed order more narrowly defines "Confidential Material" as "any material that: (1) contains information that is not known to be in the public domain such as trade secrets, confidential commercial or financial information, or confidential research and development information; and (2) reasonably would cause specific or cognizable harm if disclosed publicly or to unauthorized persons."

52867, at *40. Relatedly, Defendants' proposed order does not define sensitive personal

information at all, apparently leaving it up to the parties to determine what constitutes such

information.[9]

> b. *Defendants' proposed order conflicts with Plaintiffs' legal constraints and improperly prohibits Plaintiffs from sharing law enforcement information*

Defendants ignore that Plaintiffs are government entities with enforcement authority that

are subject to laws affecting their ability to enter protective orders. Plaintiff States' legal

constraints involve, among other things, public records laws and document destruction

prohibitions. In addition, Plaintiff States may, in their prosecutorial discretion, determine that it

is appropriate to share information with other law enforcement agencies.

Defendants' proposed order conflicts with various legal constraints. For example,

Defendants' proposed order violates Florida's Public Records Act (Ch. 119, Fla. Stat.)[10] in at

---

[9] In contrast, Plaintiffs' proposed order does contain such a definition. Reigstad Decl., Ex. 2, I.D. Also worth noting is that Defendants' proposed order provides no specific protection for the FTC's undercover information while the order provided by Plaintiffs does. *Compare* Doc. 60-6 *with* Reigstad Decl., Ex. 2.

[10] Under Florida law, any documents that a state agency "receives during the course of performing a public function are public records." *Sovereign Health of Fla., Inc. v. City of Fort Myers*, 2:15-cv-265-FTM-29CM, 2016 U.S. Dist. LEXIS 139591, at *12 (M.D. Fla. Oct. 7, 2016) (citing *Hill v. Prudential Ins. Co. of Am.*, 701 So.2d 1218, 1220 (Fla. Dist. Ct. App. 1997). "A public record cannot be transformed into a private record merely because an agent of the government has promised that it will be kept private." *Id.* at 1208. The determination as to when public records are to be deemed confidential rests exclusively with the legislature. *Sepro Corp. v. Fla. Dep't of Envtl. Prot.*, 839 So. 2d 781 (Fla. 1st DCA 2003), *review denied sub nom., Crist v. Dep't of Envtl. Prot.*, 911 So. 2d 792 (Fla. 2005). "Even the judiciary cannot exempt public records from public disclosure unless the records fall under a statutory exemption specifically provided by the legislature." *Sovereign Health*, 2016 U.S. Dist. LEXIS 139591, at *13-14 (citing *Fla. Freedom Newspapers, Inc. v. McCrary*, 520 So.2d 32, 34 (Fla. 1988) (refusing to enter a protective order that would have allowed a private party to unilaterally designate materials as confidential, creating new exemptions from the Public Records Act, which might subject the governmental entity to public records litigation); *Bd. of Trs., Jacksonville Police & Fire Pension Fund v. Lee*, 189 So.3d 120, 123 (Fla. 2016)).

least three ways that cannot be bargained away. *See, e.g.*, *Nat'l Collegiate Athletic Ass'n v. Associated Press*, 18 So. 3d 1201, 1207-08 (Fla. 1st DCA 2009), *review denied,* 37 So. 3d 848 (Fla. 2010)); *see also Wait v. Fla. Power & Light Co.*, 372 So.2d 420 (Fla. 1979) (holding that engaging in litigation before a federal forum does not affect or change rights under Florida's Public Records Act). First, Defendants' expansive definition of Confidential Material (discussed above) is far broader than the limited exemptions from inspection or copying of public records contained in Ch. 119, Fla. Stat. (*e.g.*, trade secrets). Second, Defendants' proposed order violates Florida's mandatory document retention schedules and document disposal processes. *See* §§ 119.021 and 257.36(6), Fla. Stat. (Florida's Consumer Protection Division requires civil litigation case files to be retained for a minimum of five years from the date the case is closed); *cf.* Doc. 60-6, ¶ 15 (requiring the destruction or return of all Confidential Material "within 60 days of final termination of all claims asserted in this Action").[11]  Third, Defendants' proposed order contains improper restrictions on government functions, such as the use and sharing of documents for enforcement of state laws.[12]

---

[11] Defendants' proposed order similarly conflicts with Illinois' document retention law that requires Plaintiff State of Illinois to maintain state records, including litigation files, in accordance with an approved document retention policy; the applicable policy requires litigation files to be maintained longer than 60 days. *See* 5 ILCS 160/1, *et seq*.

[12] Defendants' proposed order broadly states that all discovery material, whether or not confidential, "shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose." Doc. 60-6, § 8. This provision improperly attempts to make all records produced by Defendants in discovery exempt from public record. Again, this restriction contradicts the limited exemptions from inspection or copying of public records contained in Ch. 119, Fla. Stat. Further, if the State of Florida identified other potential unlawful conduct by Defendants or other third parties, the State of Florida should not be restricted from using those documents and should not be prohibited from sharing discovery material with other agencies or governmental entities. *See, e.g.*, § 119.0715, Fla. Stat. (allowing the State of Florida to disclose trade secrets to an officer or employee of another agency or governmental entity whose use of the trade secret is within the scope of his or her lawful duties and responsibilities).

Defendants' proposal also fails to account for all Plaintiff States' inherent authority to make referrals and share information with other governmental bodies when doing so serves the public interest. Defendants' proposed order effectively bars each Plaintiff State from sharing documents that Defendants designate as "confidential" with any other law enforcement agency, unless the information sharing is (a) "required by law;" (b) Defendants consent; or (c) Defendants refuse to consent and then are overruled by the Court after the State is forced to expose and litigate the merits of its intended collaboration. *See* Doc. 60-6, ¶ 6. Defendants also appear to contend that neither the States, nor any other law enforcement agency, should be permitted to use any purportedly confidential documents in any proceeding apart from this litigation. *See id* ¶ 8.

Defendants cannot proffer any legitimate basis for these extraordinary proposals, which fly in the face of established public policy promoting the effective coordination of law enforcement. Courts in this Circuit have consistently rejected such procedural gamesmanship that shields civil and criminal misconduct from responsible authorities, and this Court should do the same. *See, e.g.*, *New York v. Grand River Enters. Six Nations, Ltd.*, No. 14-cv-910A(F), 2020 U.S. Dist. LEXIS 124977, at *5 (W.D.N.Y. July 15, 2020) ("That other agencies may have a valid interest in pursuing similar actions against [d]efendants and benefit from any sharing of [d]efendants' confidential information by [p]laintiff . . . can be readily justified as in the public interest. Such motives attributable to [p]laintiff can therefore hardly be characterized as a form of discovery abuse warranting Rule 26(c) relief."); *EEOC v. United Parcel Service, Inc.*, 15-cv-4141 (MKB) (CLP), 2018 U.S. Dist. LEXIS 37646, *13 (E.D.N.Y. Mar. 5, 2018) ("That information obtained in discovery might reveal other wrongdoing for which [defendant] could be held liable does not constitute the good cause required by Rule 26(c). Indeed, it would be

16

profoundly unjust for the Court to require [a government agency] to turn a blind eye to information properly obtained through discovery while litigating a case under its statutory authority to act in the public interest to remedy unlawful [conduct].").

Defendants also apparently seek to circumvent federal disclosure rules, which they have known about for quite some time, including well before they produced documents in connection with the underlying investigation. For example, as set forth in the FTC's Civil Investigative Demand and cover letter, the FTC may disclose information as allowed under the FTC Act (15 U.S.C. § 57b-2), the FTC's Rules of Practice (16 C.F.R. §§ 4.10 & 4.11), or if required by a legal obligation; or in response to a valid request from Congress or other civil or criminal federal, state, local, or foreign law enforcement agencies. Similarly, on August 25, 2022, also before this lawsuit was filed, Plaintiff FTC sent Defendants a letter under 16 C.F.R. § 4.10(g) notifying Defendants that information Roomster provided in response to the FTC's Civil Investigative Demand may be disclosed in this federal court proceeding. It further stated that disclosure "will be limited to information that is relevant and material to the proceeding and may include information that [Roomster] designated as confidential." The FTC received no response, and Defendants did not raise confidentiality concerns at that time.

For the foregoing reasons, the Court should not enter Defendants' proposed protective order.

  ii. <u>If the Court is inclined to enter a protective order, it should enter the protective order proposed by Plaintiffs</u>

If the Court is inclined to enter a protective order in this matter, it should enter the order proposed by Plaintiffs and attached to the Reigstad Declaration at Exhibit 2. Plaintiffs' proposed protective order accounts for all Plaintiffs' constraints and legal obligations and incorporates this

Court's Addendum (*see* Individual Practices and Procedures of J. McMahon, VI, p. 17), which was tellingly absent from Defendants' proposed order when they previously forwarded that proposal to Plaintiffs. *See* Doc. 60-1, ¶ 12.

Defendants' failure to inform the Court of the terms reflected in Plaintiffs' proposed order is disingenuous to say the least. As the Court can see, Plaintiffs did not submit an "entirely new draft" in December (*see* Doc. 60 at 12)—they revised the version originally forwarded to Defendants in November to (1) incorporate state-specific sections to address their public records laws and document destruction constraints (*see* Reigstad Decl., Ex. 2, §§ I.C, V.C, and IX.D); (2) incorporate Defendants' proposals on timing to move the Court for a protective order to uphold a confidentiality designation if the parties are unable to resolve the dispute (*see* Reigstad Decl., Ex. 2, § IV(C)); and (3) omit the certification of good faith designations section that Defendants apparently complain about on page 12 of their motion (*compare* Doc. 60-3, § III *with* Reigstad Decl., Ex. 2 (containing no such requirement)).[13]

The facts and circumstances make clear that only Defendants have refused to negotiate in good faith, immediately disregarding and refusing to even discuss Plaintiffs' proposed drafts. Plaintiffs are unable to agree to Defendants' proposed order, which cuts against Plaintiffs' statutory constraints and is overbroad, unworkable, and subject to abuse for the reasons previously stated. Therefore, should the Court entertain any part of Defendants' request to enter a

---

[13] Defendants attach two protective orders from unrelated and vastly different cases to their motion, the significance of which is unclear. For one of those unrelated orders (Doc. 60-4), which involves a complex case with much more data (*FTC v. Meta, et al.*), they say that a prohibition on mass designation of confidential materials is absent—but that prohibition has been contained in every draft in this matter, including Defendants' draft. For the second unrelated order (Doc. 60-5), they complain that it does not include a provision requiring signed declarations, but Plaintiffs removed that provision in the revised proposed order they sent to Defendants prior to the motion for stay. *See* Reigstad Decl., Ex. 2.

protective order governing discovery, Plaintiffs respectfully request that the Court enter

Plaintiffs' proposed order.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

motion.

Dated: January 20, 2023                    Respectfully submitted,


_____
ANGELEQUE P. LINVILLE (*admitted pro hac vice*)
alinville@ftc.gov; (404) 656-1354
VALERIE M. VERDUCE (*admitted pro hac vice*)
vverduce@ftc.gov; (404) 656-1355
Federal Trade Commission
233 Peachtree Street, Suite 1000
Atlanta, GA 30303
Facsimile: (404) 656-1379

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION


*I certify pursuant to Rule 8.5(b) of the Electronic Case Filing Rules and Instructions that each of the other signatories to this memorandum of law has agreed to the form and substance and that I have their consent to submit this memorandum electronically.*

19

ROB BONTA
Attorney General, State of California

NICKLAS A. AKERS
Senior Assistant Attorney General

*/s/ Adelina Acuña*

EMILY KALANITHI (NY 4191805)
Supervising Deputy Attorney General
emily.kalanithi@doj.ca.gov; (415) 510-3468
JON F. WORM (*admitted pro hac vice*)
Supervising Deputy Attorney General
jon.worm@doj.ca.gov; (619) 738-9325
ADELINA ACUÑA (*admitted pro hac vice*)
Deputy Attorney General
adelina.acuna@doj.ca.gov; (415) 510-3752
TIMOTHY E. SULLIVAN (*admitted pro hac vice*)
Deputy Attorney General
timothy.sullivan@doj.ca.gov; (510) 879-0987
CAROLINE E. WILSON (*admitted pro hac vice*)
Deputy Attorney General
callie.wilson@doj.ca.gov; (415) 229-0106

California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., 11th Fl.
San Francisco, CA 94102

Attorneys for Plaintiff
PEOPLE OF THE STATE OF CALIFORNIA

PHILIP J. WEISER

Attorney General
State of Colorado


*/s/ Brady J. Grassmeyer*
_____
ABIGAIL M. HINCHCLIFF (*admitted pro hac vice*)
First Assistant Attorney General
Abigail.Hinchcliff@coag.gov; (720) 508-6000
BRADY J. GRASSMEYER (*admitted pro hac vice*)
Assistant Attorney General
Brady.Grassmeyer@coag.gov; (720) 508-6000
1300 Broadway, 10th Floor
Denver, CO 80203

Attorneys for Plaintiff
STATE OF COLORADO



ASHLEY MOODY
Attorney General, State of Florida

*/s/ Ryann H. Flack*
_____
Ryann H. Flack (*admitted pro hac vice*)
Ryann.Flack@myfloridalegal.com; (786) 792-6249
Miles Vaughn (*admitted pro hac vice*)
Miles.Vaugh@myfloridalegal.com; (813) 287-7257
Office of the Attorney General
Consumer Protection Division
SunTrust International Center
1 S.E. 3rd Avenue, Suite 900
Miami, FL 33131

Attorneys for Plaintiff
STATE OF FLORIDA

KWAME RAOUL
Attorney General of Illinois


*/s/ Elizabeth Blackston*
_____
CASSANDRA HALM (*admitted pro hac vice*)
Assistant Attorney General
Cassandra.Halm@ilag.gov; (217) 725-9591

ELIZABETH BLACKSTON (*admitted pro hac vice*)
Bureau Chief
Elizabeth.Blackston@ilag.gov; (217) 725-8649

Office of the Illinois Attorney General
500 South Second Street
Springfield, IL 62701

Attorneys for Plaintiff
THE PEOPLE OF THE STATE OF ILLINOIS



ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts

*/s/ Mychii Snape*
_____
Mychii Snape (MS1544)
Assistant Attorney General
Mychii.Snape@mass.gov; (617) 727-2200
Consumer Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108

Attorney for Plaintiff
COMMONWEALTH OF MASSACHUSETTS

LETITIA JAMES
Attorney General of the State of New York

*/s/ Christian Reigstad*

_____

MELVIN L. GOLDBERG
Assistant Attorney General
Melvin.Goldberg@ag.ny.gov; (212) 416-8296
Christian Reigstad
Assistant Attorney General
Christian.Reigstad@ag.ny.gov; (212) 416-8321
28 Liberty Street
New York, New York 10005
Facsimile: 212-416-6003

Attorneys for Plaintiff
PEOPLE OF THE STATE OF NEW YORK

and

JANE M. AZIA
Bureau Chief
Consumer Frauds and Protection Bureau

LAURA J. LEVINE
Deputy Bureau Chief
Bureau of Consumer Frauds and Protection

Of Counsel for Plaintiff
PEOPLE OF THE STATE OF NEW YORK

23